IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CONSUELA SMITH-WILLIAMS, FRED
RIVERS, RICHARD MURPHY, ROBERT
RISTOW, ROGER SUHR, and
SALVADOR FUENTES, individually, and
on behalf of all similarly situated,

        Case No. 17-cv-823-wmc

        Plaintiffs,

    v.

UNITED STATES OF AMERICA,

        Defendant.

---

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

The United States of America ("United States"), by its attorneys, Scott C. Blader, United States Attorney for the Western District of Wisconsin, and David D. Conway, Assistant United States Attorney, hereby submits this memorandum of law in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## <u>INTRODUCTION</u>

Plaintiffs' claims belong to a disfavored species of tort law with a rich common law history mandating their dismissal in this context. Plaintiffs allege suffering emotional distress upon learning that a dentist at the Tomah VA Medical Center ("Tomah VA") failed to sterilize his dental drill bits properly, subjecting them to a low-level risk of infection for which each has conclusively tested negative. Despite suffering

no physical injuries, Plaintiffs now seek to recover for the temporary fears they allege experiencing prior to learning their test results.  And they propose to do so on behalf of a class of 592 unnamed persons who have not filed administrative claims with the VA.

Fear of disease claims are subject to a "bright line" rule in Wisconsin.  Like the majority of jurisdictions, Wisconsin courts require plaintiffs to allege and prove exposure to a "contaminated source" before they can recover.  This requirement ensures that a plaintiff's fears of disease are based on science rather than speculation: a plaintiff who has not been exposed to a disease has no chance of contracting it.  Because Plaintiffs have not alleged that the dental drill bits at issue were contaminated, the Court must dismiss their claims as a matter of law.

Even if Plaintiffs' claims could survive dismissal, the Court would still need to dismiss the proposed class for failure to exhaust administrative remedies.  The United States is immune from suit except to the extent that it has consented.  Under the Federal Tort Claims Act ("FTCA"), the United States' consent is preconditioned on each claimant first exhausting his or her remedies.  Exhaustion is an absolute prerequisite to an FTCA action.  In class actions, federal courts have "uniformly" held that each class member must separately exhaust.  The language and purpose of the FTCA both require this.  Yet, the unnamed class members have not done so, as the complaint confirms.

Plaintiffs have alleged a concerning series of events that fortunately resulted in no physical harm.  But under the FTCA, this Court is required to apply Wisconsin law and to construe the exhaustion requirement strictly.  Numerous courts have rejected claims similar to Plaintiffs' for the above reasons.  This Court should do the same here.

2

## BACKGROUND

### I.    FACTS ALLEGED BY PLAINTIFFS [1]

Dr. Tomas Schiller ("Dr. Schiller") is a dentist formerly employed by the Tomah VA.  Pls.' Compl. ¶ 8.  Plaintiffs and putative class members are patients who received dental care from Dr. Schiller at the Tomah VA's dental clinic.  *Id.* ¶¶ 1, 8, 27.

Between October 5, 2015, and October 21, 2016, Dr. Schiller allegedly (1) used unsterile dental burs (*i.e.*, dental drill bits); (2) re-used dental burs intended for single use on multiple patients; (3) sprayed unsterile dental burs with an improper disinfectant between procedures; (4) failed to observe certain infection control practices like hand washing; (5) failed to wear personal protective equipment during procedures; and (6) occasionally slept at his desk.  *Id.* ¶ 9.  By doing so, Dr. Schiller allegedly breached the infection control standards of the VA and other organizations.  *Id.* ¶ 10.

In or about December 2015, Dr. Schiller's dental assistant reported his use of unsterile dental burs to the lead hygienist.  *Id.* ¶ 11.  The lead hygienist allegedly disclaimed responsibility and instructed the assistant to inform the chief of dental services.  *Id.* ¶ 12.  However, the assistant had previously reported Dr. Schiller's poor hygiene, failure to use personal protective gear, and occasional desk naps to the chief of dental services, who took no action.  *Id.* ¶ 13.  Due to this, and out of an alleged fear of retaliation, the assistant did not report Dr. Schiller's use of unsterile burs.  *Id.* ¶ 14.

---

[1] The United States disputes many of the allegations in Plaintiffs' complaint.  However, solely for purposes of this motion, it will assume their truthfulness.

On May 16, 2016, Dr. Schiller allegedly received a professional evaluation from the Tomah VA citing "no concerns regarding competency," even though "other" dental clinic employees knew of Dr. Schiller's breach of infection control standards. *Id.* ¶ 15.

On October 20, 2016, a substitute dental hygienist reported Dr. Schiller for using an unsterile dental bur to the acting chief of dental services. *Id.* ¶¶ 16–17. The acting chief reported the incident to Tomah VA managers, who confronted Dr. Schiller. *Id.* ¶¶ 17–18. Dr. Schiller allegedly "admitted to using and re-using unsterile dental burs" and said "he believed it was a common practice." *Id.* ¶ 18.

The Tomah VA determined that Dr. Schiller's practices put his patients at a low risk of contracting Hepatitis B, Hepatitis C, and HIV. *Id.* ¶ 19. As a result, on or about November 29, 2016, the Tomah VA sent notification letters to Plaintiffs and putative class members informing them of the situation. *Id.* ¶ 20, Ex. C. The letters stated, in part, "while we believe the risk of infection is low, we recommend you come in to be tested," at no cost, for Hepatitis B, Hepatitis C, and HIV. *Id.*

Plaintiffs and putative class members subsequently underwent blood testing to determine whether they had contracted the potential viruses. *Id.* ¶¶ 21–24. Those who received treatment from Dr. Schiller between October 5, 2015, and May 28, 2016, underwent one blood test and waited approximately two weeks for the results. *Id.* ¶¶ 8, 21–22. Those who received treatment between May 29, 2016, and October 21, 2016, underwent multiple blood tests over up to six months to account for the time it takes the viruses to become detectable after exposure. *Id.* ¶¶ 8, 23–24. Plaintiffs do not specify the category to which each of them belongs. *See id.* ¶ 21–24.

Ultimately, Plaintiffs and putative class members all tested negative for the viruses. *Id.* ¶¶ 22, 24. But they claim that Dr. Schiller's negligent practices, and the Tomah VA's negligent training, supervision, and retention of Dr. Schiller, caused them to suffer "severe emotional distress" from the time they received the VA's notification letter until they received their final blood test results. *Id.* ¶¶ 25–26, 37, 41. During that time, Plaintiffs claim that they "were forced to consider that they may have been infected with deadly viruses, may die as a result of having been infected, and/or may have unknowingly infected their loved ones." *Id.* These are the only facts that Plaintiffs' allege about their "severe emotional distress."

Plaintiffs do not allege that any of the patients Dr. Schiller treated before or during the relevant period were ever infected with Hepatitis or HIV. Nor do they allege that any of the unsterile dental burs he allegedly used came into contact with the viruses. Plaintiffs also do not claim that their contact with the unsterile dental burs would have constituted a viable method of transmission if the dental burs had been contaminated. They also do not allege that any of Dr. Schiller's other allegedly improper practices exposed them to contaminated sources, or that they suffered any physical injuries as a result of Dr. Schiller's treatment.

## II.    PLAINTIFFS' PROPOSED CLASS AND SUBCLASS

Plaintiffs intend to seek permission to represent a putative class and subclass pursuant to Fed. R. Civ. P. 23. Pls.' Compl. ¶¶ 27–34. They define the putative class as all Tomah VA patients who received dental care between October 2015, and October 2016; who received a letter from the Tomah VA informing them of their potential

exposure to diseases; and who subsequently tested negative for those diseases.  *Id.* ¶ 27.
The proposed sub-class is limited to only those class members who received dental care
between May 29, 2016, and October 21, 2016, and who were forced to undergo multiple
blood tests over up to six months to determine that they were not infected.  *Id.* ¶ 28.

### III.   PLAINTIFFS' ADMINSTRATIVE CLAIMS

Plaintiffs' complaint attaches the administrative claim form (*i.e.*, SF-95 Form) that
each Plaintiff submitted to the VA prior to filing this lawsuit.  *See* Pls.' Compl. ¶ 6, Ex. A
at 6–7, 11–12, 20–21, 36–37, 49–50, 58–59.  Each claim form broadly asserts the same
allegations set forth above and seeks $50,000.00 in personal injury damages for
"extreme emotional distress."  *Id.*  None of Plaintiffs' claim forms mention representing
a class of individuals.  *Id.*  Plaintiffs do not allege that any of the other putative class
members have filed administrative claims with the VA prior to this lawsuit.  *See id.* ¶ 6.

Plaintiffs' complaint also attaches a cover letter, dated April 20, 2017, from their
counsel to the VA enclosing the claim forms.  *Id.* ¶ 6, Ex. A at 2–3.  In the letter,
Plaintiffs' counsel says that Plaintiffs "are presenting claims in their individual capacity
and on behalf of 592 putative class members who were identified by the [VA] as having
been negligently exposed to the risk of infection" during the relevant time period.  *Id.*

### PROCEDURAL HISTORY

On November 1, 2017, Plaintiffs filed a class action against the United States for
(1) negligent infliction of emotional distress (hereafter, "negligent infliction"), and
(2) negligent training, supervision, and retention (hereafter, "negligent supervision"),
arising under the FTCA, 28 U.S.C. §§ 1346(b), 2401(b), 2671–80.  Pls.' Compl. ¶¶ 35–41.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conversely, a complaint does not state a plausible claim to relief by merely offering a "formulaic recitation of the elements of a cause of action," or by making "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoted omitted).

Courts consider two guiding principles when assessing the "facial plausibility." First, a court may disregard "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Second, as a practical matter, if the pleading does not state a plausible claim, it should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

## ARGUMENT

### I.    PLAINTIFFS HAVE NOT ALLEGED COGNIZABLE CLAIMS UNDER WISCONSIN LAW

The FTCA grants federal courts exclusive jurisdiction over civil actions for injuries caused by the negligence of federal employees.  *See* 28 U.S.C. § 1346(b)(1). Liability under the FTCA exists "where the United States, if a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred." *Id.*  Because Plaintiffs' claims arise at the Tomah VA, Wisconsin law governs.

#### A.    Basic Principles of Negligence Law in Wisconsin

Negligence has four elements under Wisconsin law: (1) a defendant's duty of care; (2) a breach of that duty; (3) a causal connection between the defendant's breach and the plaintiff's injury; and (4) an actual loss or damage as a result of the injury. *Smaxwell v. Bayard*, 2004 WI 101, ¶ 32, 274 Wis. 2d 278, 682 N.W.2d 923 (quote omitted).

The causation element consists of two distinct concepts: cause-in-fact and proximate cause.  *See Morgan v. Pennsylvania General Ins. Co.*, 275 N.W.2d 660, 666 (1979); *see also Fandrey ex rel. Connell v. American Family Mut. Ins. Co.*, 2004 WI 62, ¶¶ 10–16, 272 Wis. 2d 46, 680 N.W.2d 345 (2004).  Cause-in-fact asks "whether the negligence was a 'substantial factor' in producing the injury."  *Morgan*, 275 N.W.2d at 666.  This is "a factual question for the jury if reasonable men could differ on the issue," or a legal question for the court "if reasonable men could not disagree."  *Id.* at 666.

By contrast, proximate cause considers whether "[p]ublic policy considerations may preclude liability" and is a "question of law solely for judicial decision."  *Morgan*,

275 N.W.2d at 667; *see also Fandrey*, 2004 WI 62, ¶¶ 10–15.  "[W]hen a court precludes liability based on public policy factors, it is essentially concluding that despite the existence of cause-in-fact, the cause of the plaintiff's injuries is not legally sufficient to allow recovery." *Id.* ¶ 13.  This requires an act of "judicial line drawing."  *Id.* ¶ 15. Courts may determine proximate cause at the pleading stage if "the facts presented are simple" and "the question of public policy is fully presented by the complaint and the motion to dismiss."  *Bowen v. Lumbermens Mut. Cas. Co.*, 517 N.W.2d 432, 443 (1994).

Public policy reasons for not imposing liability include (1) the injury is too remote from the negligence; (2) the injury is out of proportion to the culpability of the negligent tortfeasor; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; (5) allowance of recovery would be too likely to open the way for fraudulent claims; and (6) allowance of recovery would enter a field that has no sensible or just stopping point.  *Morgan*, 275 N.W.2d at 667; *see also Bowen*, 517 N.W.2d at 443–44.  Any of these considerations alone is sufficient to deny recovery.  *Rieck v. Medical Protective Co.*, 219 N.W.2d 242, 244 (1974).

Here, Plaintiff asserts two causes of action: (1) negligent infliction of emotional distress, and (2) negligent hiring, training, or supervision.  Both torts are species of negligence law that track the general negligence framework set forth above.

1.   Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress has evolved significantly in Wisconsin over the last century, culminating in *Bowen*, 517 N.W.2d at 436–442 (surveying evolution).  In that case, the Wisconsin Supreme Court held that negligent infliction claims must set forth the traditional elements of negligence—*i.e.*, negligent conduct, causation, and injury.  *Id.* at 442–43, 46.  The requisite injury for negligent infliction is "severe emotional distress."  *Id.* at 442–43; *see infra* Argument § I.C.  Even if a plaintiff satisfies these requirements, the court may still "decide, as a matter of law, that considerations of public policy require dismissal."  *Bowen*, 517 N.W.2d at 443.

2.   Negligent Training, Supervision, or Retention

The Wisconsin Supreme Court first recognized negligent supervision in *Miller v. Wal–Mart Stores, Inc.*, 580 N.W.2d 233, 237 (1998).  There, the court held that a plaintiff must plead and prove the traditional elements of negligence, with a modified cause-in-fact element.  *Id.* at 238–39.  For negligent supervision, the cause-in-fact inquiry is twofold: (1) the wrongful act of the employee must be a cause-in-fact of the plaintiff's injury, and (2) the negligence of the employer must be a cause-in-fact of the employee's wrongful act.[2]  *Miller*, 580 N.W.2d at 238–39.  Negligent supervision is also subject to "public policy considerations" which may "preclude imposing liability."  *Id.* at 239–40.

---

[2]  Negligent supervision claims are derivative of the employee's underlying wrongful conduct. *John Doe 1 v. Archdiocese of Milw.*, 2007 WI 95, ¶ 36, 303 Wis. 2d 34, 734 N.W.2d 827.

### B.    Plaintiffs' Claims Fail as a Matter of Law for Lack of Proximate Cause Because They Have Not Alleged a "Contaminated Source"

In Wisconsin, courts have historically been reluctant to compensate plaintiffs in negligence for emotional harm absent accompanying physical injury.  *See Bowen*, 517 N.W.2d at 437.  This reluctance is especially strong in fear of disease cases, where Wisconsin courts require, as a matter of public policy, that plaintiffs allege exposure to a "contaminated source" in order to recover.  Here, Plaintiffs' claims fail on this basis.

Fear of disease claims have arisen frequently in state and federal courts over the last thirty years.  The case law is replete with examples like this one, in which an individual asserts no physical injury but alleges fear of contracting a disease (usually HIV or Hepatitis) after being negligently exposed to a needle, an infected individual, or some other object (*e.g.*, condom, scalpel).  The highest courts of at least eight states have held that such claims require proof of "actual exposure," which consists of an infected source and a viable method of disease transmission.[3]  The vast majority of intermediate

---

[3] *See, e.g., Grantham v. Vanderzyl*, 802 So.2d 1077, 1081 (Ala. 2001) ("The mere fear of contracting a disease, without actual exposure to it, cannot be sufficient to cause the level of emotional distress necessary"); *John & Jane Roes, 1–100 v. FHP, Inc.*, 985 P.2d 661, 667–68 (Haw. 1999) ("[W]e hold that a plaintiff states a claim of NIED . . . where he or she alleges . . . actual exposure to HIV-positive blood"); *Majca v. Beekil*, 701 N.E.2d 1084, 1090 (Ill. 1998) ("Without proof of actual exposure to HIV, a claim for fear of contracting AIDS is too speculative to be legally cognizable"); *Bain v. Wells*, 936 S.W.2d 618, 625 (Tenn. 1997) ("[T]o recover emotional damages based on the fear of contracting AIDS, a plaintiff must prove, at a minimum, that he or she was actually exposed to HIV"); *K A.C. v. Benson*, 527 N.W.2d 553, 559–60 (Minn. 1995) ("In an action for damages based solely upon plaintiff's fear of acquiring AIDS, without allegation of actual exposure to HIV, no legally cognizable claim exists under Minnesota law"); *Brzoska v. Olson*, 668 A.2d 1355, 1363–64 (Del. 1995) ("[T]he mere fear of contracting AIDS, in the absence of actual exposure to HIV, is not sufficient to impose liability on a health care provider"); *Neal v. Neal*, 873 P.2d 871, 876 (Idaho 1994) ("We hold that there can be no reasonable fear of contracting [a sexually-transmitted] disease absent proof of actual exposure"); *Carroll v. Sisters of St. Francis Health Services, Inc.*, 868 S.W.2d 585, 594 (Tenn. 1993) ("In order to recover emotional

appellate courts nationwide have reached the same holding.[4]  Only a small minority of

courts have permitted fear of disease claims without proof of actual exposure.[5]

The Wisconsin Court of Appeals has adopted the majority approach.  In *Babich*,

the plaintiff sued a hospital for emotional distress arising from her fear of contracting

HIV after she was "poked" by a used syringe left in the fresh linens of her hospital bed.

556 N.W.2d at 145.  After analyzing the national case law, the court held that in

Wisconsin "public policy requires plaintiffs seeking compensation for their emotional

distress arising out of needlestick injuries (and related puncture wounds) to prove that

the device which wounded them came from a contaminated source."  *Id.* at 148.  The

---

damages based on the fear of contracting AIDS, the plaintiff must prove, at a minimum, that he or she was exposed to HIV"); *Funeral Services by Gregory, Inc. v. Bluefield Comm. Hosp.*, 413 S.E.2d 79, 84 (W. Va. 1991) (finding no legally compensable injury "if a suit for damages is based solely upon the plaintiff's fear of contracting AIDS, but there is no evidence of actual exposure to the virus"), *overruled on other grounds*, *Courtney v. Courtney*, 437 S.E.2d 436, 443 (W. Va. 1993); *Johnson v. West Virginia Univ. Hosp., Inc.*, 413 S.E.2d 889, 893–94 (W. Va. 1991) (recovery for emotional distress limited to situation where plaintiff is "actually exposed to the AIDS virus").

[4]  *See, e.g.*, *Babich v. Waukesha Memorial Hosp., Inc.*, 556 N.W.2d 144, 147 (Wis. Ct. App. 1996); *Coca-Cola Bottling Co. v. Hagan*, 813 So.2d 167, 169–70 (Fla. Dist. Ct. App. 2002); *Falcon v. Our Lady of the Lake Hosp., Inc.*, 729 So.2d 1169, 1173 (La. Ct. App. 1999); *Fosby v. Albany Memorial Hosp.*, 675 N.Y.S.2d 231, 232 (N.Y. App. Div. 1998) (listing New York cases); *Pendergist v. Pendergrass*, 961 S.W.2d 919, 926 (Mo. Ct. App. 1998); *Reynolds v. Highland Manor, Inc.*, 954 P.2d 11, 16–17 (Kan. Ct. App. 1998); *Montalbano v. Tri–Mac Enters. of Port Jefferson, Inc.*, 652 N.Y.S.2d 780, 781 (N.Y. App. Div. 1997); *Russaw v. Martin*, 472 S.E.2d 508, 512 (Ga. Ct. App. 1996); *Brown v. NYC Health & Hosps. Corp.*, 648 N.Y.S.2d 880, 886 (N.Y. App. Div. 1996); *Drury v. Baptist Memorial Hosp. Sys.*, 933 S.W.2d 668, 674–75 (Tex. App. 1996); *Doe v. Surgicare of Joliet, Inc.*, 643 N.E.2d 1200, 1203–04 (Ill. App. Ct. 1994); *Kerins v. Hartley*, 27 Cal. App. 4th 1062, 1074 (Cal. Ct. App. 1994); *Seimon v. Becton Dickinson & Co.*, 632 N.E.2d 603, 605 (Ohio Ct. App. 1993); *Lubowitz v. Albert Einstein Med. Center*, 623 A.2d 3, 5 (Pa. Super. Ct. 1993); *Vallery v. Southern Baptist Hosp.*, 630 So.2d 861, 867 (La. Ct. App. 1993); *Ordway v. County of Suffolk*, 583 N.Y.S.2d 1014, 1016–17 (N.Y. Sup. Ct. 1992); *Hare v. State*, 570 N.Y.S.2d 125, 127 (N.Y. App. Div. 1991); *see also Corrington v. United States*, 767 F. Supp. 2d 956, 958 (S.D. Ill. 2011);  *Dillard v. Torgerson Props., Inc.*, No. 05-cv-2334, 2006 WL 2974302, at *2–4 (D. Minn. Oct. 16, 2006); *Wilder v. United States*, 230 F. Supp. 2d 648, 652–53 (E.D. Pa. 2002); *Burk v. Sage Prods., Inc.*, 747 F. Supp. 285, 287–88 (E.D. Pa. 1990).

[5]  *See, e.g.*, *Hartwig v. Oregon Trail Eye Clinic*, 580 N.W.2d 86, 94 (Neb. 1998); *Madrid v. Lincoln Cnty. Med. Cntr.*, 923 P.2d 1154, 1161 (N.M. 1996); *Faya v. Almaraz*, 620 A.2d 327, 337 (Md. 1993).

court acknowledged that leaving a used syringe in fresh linens "seems like an extremely reckless act," and that contact with one could cause a reasonable fear of disease. *Id.* But by requiring a contaminated source, the court sought to ensure that legal recovery for such fears would be based on scientific fact rather than speculation. *Id.* It emphasized that this "bright line" rule is a "useful tool" that applies in a "variety of contexts."[6] *Id.*

The *Babich* holding is consistent with Wisconsin Supreme Court precedent barring plaintiffs who suffer physical injuries from recovering for fear of resulting health consequences that are "highly unlikely" or only "remotely conceivable." *Brantner v. Jenson*, 360 N.W.2d 529, 533 (1985). For instance, in *Howard v. Mount Sinai Hospital*, the plaintiff sought damages for fear of cancer after a hospital intern broke a catheter while inserting it, leaving two irremovable pieces inside. 217 N.W.2d 383, 384 (1974). The court held that "the claim of damages (by way of cancer) is so remote and is so out of proportion to the culpability of the tort-feasor that, as a matter of public policy," the defendant could not be liable. *Id.* at 385. By analogy, a plaintiff who is never exposed to a contaminated source has no chance whatsoever of contracting the feared disease.[7]

---

[6] Published opinions of the Wisconsin Court of Appeals "have statewide precedential effect." Wis. Stat. § 752.41(2). Under the FTCA, this Court is bound to apply *Babich* absent "persuasive indications that the highest court . . . would decide the case differently." *Dux v. United States*, 69 F. Supp. 3d 781, 789 (N.D. Ill. 2014); *Allstate Ins. Co. v. Menard's*, 285 F.3d 630, 637 (7th Cir. 2002).

[7] The key distinction between *Babich* and *Howard* is the type of recovery sought. In *Babich*, the plaintiff sued for fear of disease only, 556 N.W.2d at 145, whereas the plaintiff in *Howard* sued for both physical injury and fear of disease, 217 N.W.2d at 384. In Wisconsin, emotional distress is generally recoverable "where the plaintiff can demonstrate a physical injury at the time of the accident." *Schaffer v. Progressive Ins. Co.*, 2005 WI App. 99, ¶ 7 n.3. In this case, *Babich* controls because Plaintiffs seek to recover for fear of disease only and under circumstances akin to a needlestick claim. But even if Plaintiffs had alleged a physical injury, Plaintiffs' fear of disease claims would still fail under *Howard* the feared medical consequences would be "highly unlikely" (indeed, impossible) absent a contaminated source.

The Supreme Courts of Illinois and Minnesota also require actual exposure for fear of disease claims. In *Majca*, the Illinois Supreme Court considered consolidated cases: one in which a physician's assistant cut herself on a bloody scalpel while emptying the trash of an HIV-positive physician, and another in which an HIV-positive dental student performed procedures without disclosing his diagnosis. 701 N.E.2d at 1085–88. All plaintiffs tested negative. *Id.* The court held that "without proof of actual exposure to HIV, a claim for fear of contracting AIDS is too speculative to be legally cognizable." *Id.* at 1090. In the court's view, actual exposure "distinguishes claims based on conjecture and speculation from those that are based on a genuine fear." *Id.*

Likewise, in *K.A.C.*, the plaintiff alleged emotional distress after undergoing two gynecological procedures by an HIV-positive doctor with open sores on his hands and forearms. 527 N.W.2d at 555. The Minnesota Supreme Court held that "[i]n an action for damages based solely upon plaintiff's fear of acquiring AIDS, without allegation of actual exposure to HIV, no legally cognizable claim exists under Minnesota law." *Id.* at 560. This requirement "is consistent with the court's historical caution regarding emotional distress claims" and "with the majority of jurisdictions."[8] *Id.* at 559–60.

Here, the Court should find that Plaintiffs' claims fail for lack of proximate cause. Plaintiffs' only alleged injuries are emotional distress arising from their temporary fear of disease. *See* Pls.' Compl. ¶¶ 25–26, 37, 41. None of them allege any physical injuries. From the outset, their claims fall into the category of cases that Wisconsin courts have

---

[8] Like Plaintiffs in this case, the plaintiffs in *Majca* and *K.A.C.* received letters informing them of their potential exposure, urging them to get tested, and assuring them that their risk of infection was low. *See Majca*, 701 N.E.2d at 1087; *K A.C.*, 527 N.W.2d at 557.

historically been reluctant to recognize. *See Bowen*, 517 N.W.2d at 436 ("While courts are willing to compensate for emotional harm incident to a physical injury . . ., they have been loath to recognize the right to recover for emotional harm alone").

Additionally, Plaintiffs have not alleged any exposure to a contaminated source.[9] They assert that Dr. Schiller used and re-used "unsterile dental burs." Pls.' Compl. ¶ 9. But Plaintiffs do not claim that the dental burs he used on them were contaminated with HIV or Hepatitis. To the contrary, they allege that all class members have tested negative for the viruses, which, if anything, indicates that the dental burs were not contaminated. *Id.* ¶¶ 22, 24. Moreover, Plaintiffs do not claim that their contact with the dental burs was a viable means of transmitting the viruses. For instance, they do not claim that the dental burs caused any bleeding or punctures during treatment.

Public policy also supports requiring a contaminated source in this case. First, Plaintiffs' alleged emotional injuries would be out of proportion to the United States' negligence absent a contaminated source. *See Reynolds*, 954 P.2d at 16. Like the conduct in *Babich*, the alleged failure to sterilize dental burs may seem alarming. 556 N.W.2d at 148. Nevertheless, Plaintiffs' actual chances of contracting Hepatitis or HIV from an uncontaminated dental bur are zero percent. In these circumstances, the Wisconsin courts have required, as a matter of public policy, that plaintiffs demonstrate a scientific basis for their fears before recovering for purely emotional distress. *Id.* Even where a plaintiff suffers an accompanying physical injury, Wisconsin courts still do not allow

---

[9] Both of Plaintiffs' claims are subject to the contaminated source rule because they are premised solely on emotional injuries. *See Babich,* 556 N.W.2d at 147 ("[R]elevant public policy guideposts . . . apply whenever a court faces a suit premised on emotional injuries").

recovery for fear of resulting health problems that are "highly unlikely" or only "remotely conceivable." *Brantner*, 360 N.W.2d at 533; *Howard*, 217 N.W.2d at 384.  This Court is bound by these policy decisions.

Second, the Court would "place an unreasonable burden on future defendants" by not applying the rule here. *Babich*, 556 N.W.2d at 147.  A contaminated source is necessary to ensure "that a genuine basis for the fear exists and that the fear is not premised on public misconceptions." *Pendergist*, 961 S.W.2d at 926; *see also Babich*, 556 N.W.2d at 148.  It also "preserves an objective component in emotional distress cases necessary to ensure stability, consistency, and predictability." *Pendergist*, 961 S.W.2d at 926.  By not requiring a contaminated source, the Court could open the door to speculative fear of disease claims in other contexts with no clear stopping point (*e.g.*, sexual encounters, physical altercations, athletic events).  The Court would also eliminate the consistency and predictability guaranteed by this objective rule.

Third, the contaminated source rule would ensure that persons exposed to communicable diseases or who actually contract them are compensated for their emotional distress. *Pendergist*, 961 S.W.2d at 926.  At the same time, it would prevent an unrestricted right to recovery for all persons fearing diseases, which "could exhaust resources of defendants and insurers" and compromise the availability of healthcare and malpractice insurance.  *Id.*  In addition, the rule would "protect[] the justice system" from frivolous litigation by preventing fear of disease claims from arising "for every blood transfusion, accidental needle puncture, or . . . sexual infidelity."  *Id.*

16

In sum, a contaminated source is a "bright line" requirement for proximate cause in fear of disease claims in Wisconsin. *See Babich*, 556 N.W.2d at 148.  Because Plaintiffs have failed to allege one, the Court must dismiss their claims as a matter of law.

## C.      Plaintiffs Have Failed to Plausibly Allege "Severe Emotional Distress"

Plaintiffs' claims also fail because they have not plausibly alleged cognizable damages. *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) ("A complaint must allege facts to support a cause of action's basic elements").  Absent a physical injury, emotional distress is a cognizable injury only if it is "severe." *See Bowen*, 517 N.W.2d at 442 n.23.  "Severe emotional distress" is distress "so severe that no reasonable man could be expected to endure it." *Id.*  This requires a plaintiff to allege such "an extreme disabling emotional response to defendant's conduct" that "he was unable to function in his relationships." *Alsteen v. Gehl*, 124 N.W.2d 312, 318 (1963). "Temporary discomfort cannot be a basis for recovery." *Id.* at 318.  Nor can "minor psychic and emotional shocks." *Bowen*, 517 N.W.2d at 442.

Here, Plaintiffs' complaint offers only "threadbare recitals" of severe emotional distress without any "factual enhancement" to render them plausible. *Iqbal*, 556 U.S. at 678 (quoted omitted).  Plaintiffs' only supporting factual allegations regarding their "severe emotional distress" are that for an unspecified period of time each was "forced to consider" the possibility that they may have contracted a deadly virus and may have unknowingly spread the virus to others. Pls.' Compl. ¶¶ 25–26, 37, 41.  At the same time, Plaintiffs admit that the VA's notification letter assured them that their "risk of infection is low." *Id.* ¶ 20, Ex. C.  And none contend that their emotional response was

so extreme that it affected their relationships.  *Alsteen*, 124 N.W.2d at 318.  As a result,

Plaintiffs have not plausibly alleged the fourth element of negligence.

## II.     THE UNNAMED MEMBERS OF THE PUTATIVE CLASS HAVE FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

The United States is immune from suit except to the extent that it has consented

to be sued.  *See United States v. Sherwood*, 312 U.S. 584, 586 (1941).  The "terms of its

consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Id.*;

*see also United States v. Mitchell*, 462 U.S. 206, 212 (1983) ("It is axiomatic that the United

States may not be sued without its consent and that the existence of consent is a

prerequisite to jurisdiction"); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign

immunity is jurisdictional in nature").  As such, immunity waivers "must be strictly

construed in favor of the sovereign."  *Orff v. United States*, 545 U.S. 596, 601–02 (2005).

When "Congress attaches conditions to legislation waiving the sovereign

immunity of the United States, those conditions must be strictly observed, and

exceptions thereto are not lightly implied."  *Block v. North Dakota*, 461 U.S. 273, 287

(1983).  As the Seventh Circuit has stated, "Congress can make 'men turn square

corners' before haling the government into court—if the government attaches even

purely formal conditions to its consent to be sued those conditions must be complied

with."  *Smoke Shop, LLC v. United States*, 761 F.3d 779, 788 (7th Cir. 2014).

The FTCA is a limited waiver of the United States' sovereign immunity.  *See* 28

U.S.C. § 2674.  This waiver is preconditioned on each claimant first exhausting his or

her administrative remedies before filing suit:

> An action shall not be instituted upon a claim against the United States for money damages for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . .

28 U.S.C. § 2675(a).  The purpose of the FTCA's exhaustion requirement is to "provide the government agency with sufficient notice to investigate the incident resulting in the claim and prepare for settlement negotiations."  *Gaughan v. U.S. Bureau of Prisons*, No. 02-cv-740, 2003 WL 1626674, at *2 (N.D. Ill. Mar. 25, 2003).  It is also designed to "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement" of FTCA claims.  *Simpson v. Simpson*, No. 12-cv-140, 2012 WL 638786, at *3 (S.D. Ill. Feb. 24, 2012).

The FTCA requires claimants to adhere to specific procedures in order to exhaust their remedies.  *See Smoke Shop*, 761 F.3d at 788.  Those include submitting a written claim (usually on an SF-95 Form) with a sum certain demand for money damages to the appropriate federal agency, 28 U.S.C. § 2675(a), 28 C.F.R. § 14.2(a); and then filing suit against the United States in the appropriate federal district court after the federal agency issues its final decision or fails to do so in timely fashion, 28 U.S.C. §§ 1346(b)(1), 2675(a).  A "claim" under the FTCA requires four components: (1) notification of the incident; (2) a demand for money damages in a sum certain; (3) the title or legal capacity of the person signing; and (4) evidence of the person's authority to represent the claimant.  *See Smoke Shop*, 761 F.3d at 786 (citing 28 C.F.R. § 14.2(a)).

Administrative exhaustion is an absolute prerequisite to maintaining an FTCA action in federal court. *See McNeil v. United States*, 508 U.S. 106, 112–13 (1993); *Smoke Shop*, 761 F.3d at 786; *Palay v. United States*, 349 F.3d 418, 424–25 (7th Cir. 2003). An FTCA lawsuit filed before a federal agency receives and finally denies a claim is premature and must be dismissed. *See McNeil*, 508 U.S. at 112; *Palay*, 349 F.3d at 425.

In the class action context, federal courts have "uniformly" held that each member of a proposed class must separately exhaust prior to the filing of an FTCA action.[10] *Arctic Slope Native Assoc. v. Sebelius*, 583 F.3d 785, 794–95 (Fed. Cir. 2009). Leading authorities have recognized this line of precedent. *See, e.g.*, 14 *Federal Practice & Procedure* § 3658 (4th ed.) ("[L]ower courts have held that every unnamed class member must satisfy the exhaustion requirement"); 1 *McLaughlin on Class Actions* § 2:47 (14th ed.) ("[A] district court does not have jurisdiction over putative class members who have not complied with the FTCA's administrative claim . . . requirements").

For example, in *Harrigan*, a paralyzed veteran underwent urinary tract surgery that he allegedly would not have consented to if he had been fully advised of the

---

[10] *See, e.g., In re Agent Orange Prod. Liab. Litig. (Agent Orange II)*, 818 F.2d 194, 197–98 (2d Cir. 1987); *Lunsford v. United States*, 570 F.2d 221, 223–27 (8th Cir. 1977); *Caidin v. United States*, 564 F.2d 284, 286–87 (9th Cir. 1977); *Blain v. United States*, 552 F.2d 289, 290–91 (9th Cir. 1977); *Commonwealth of Pa. v. Nat'l Assoc. of Flood Insurers*, 520 F.2d 11, 19–21 (3d Cir. 1975), *overruled on other grounds by* 659 F.2d 306, 317 (3d Cir. 1981); *In re Katrina Canal Breaches Consol. Litig. (Katrina I)*, No. 05-cv-4181, 2009 WL 1649501, at *2–3 (E.D. La. June 9, 2009); *Cary v. United States*, No. 06-cv-2342, 2007 WL 9683542, at *2–8 (S.D. Cal., May 21, 2007); *Hoskins v. United States*, No. 00-cv-1713, 2001 WL 175237, at *3 (E.D. La. Feb. 20, 2001); *Gollehon Farming v. United States*, 17 F. Supp. 2d 1145, 1159–61 (D. Mont. 1998); *Miles v. Bell*, 621 F. Supp. 51, 68–74 (D. Conn. 1985); *In re Agent Orange Prod. Liab. Litig. (Agent Orange I)*, 506 F. Supp. 757, 760–61 (E.D.N.Y. 1980); *Kantor v. Kahn*, 463 F. Supp. 1160, 1162–64 (S.D.N.Y. 1979); *Founding Church of Scientology of Wash., D.C., Inc. v. Director, F.B.I.*, 459 F. Supp. 748, 754–56 (D.D.C. 1978); *Harrigan v. United States*, 63 F.R.D. 402, 408–09 (E.D. Pa. 1974).

consequences.  63 F.R.D. at 403.  The district court refused to allow the veteran to bring an FTCA action on behalf of a class of "all paraplegics who ha[d] undergone similar urological surgery" at VA hospitals.  *Id.* at 403, 408–09.  In the court's words: "To allow the named plaintiff here, by filing an administrative claim on his own behalf, to satisfy the administrative claim requirements for unnamed plaintiffs, would constitute a prohibited expansion of the jurisdiction of the federal courts."  *Id.* at 409.

Courts in the Seventh Circuit have not yet addressed FTCA class actions, but this Court has held that each claimant must separately exhaust in multiple claimant FTCA actions.  In *Barbee v. Unite States*, a husband and wife brought an FTCA action for injuries the husband suffered in a car accident and for the wife's resulting loss of consortium.  No. 05-cv-249, 2005 WL 2429820, at *1 (W.D. Wis. Sept. 30, 2005).  Prior to suit, only the husband filed an administrative claim.  *Id.* at *3.  Even though the husband's claim referenced his marriage, this Court held that the "husband's claim cannot serve as notice of [the wife's] loss of consortium claim."[11]  *Id.*

Additionally, the FTCA's exhaustion provision is unambiguous that each claimant must file his or her own administrative claim.  *See* 28 U.S.C. § 2675 (no action shall be instituted "unless *the claimant* shall have first presented the claim to the appropriate Federal agency and *his claim* shall have been finally denied by the agency in writing"); *see also McNeil*, 508 U.S. at 112 (instructing courts to "adhere[] to the straight-

---

[11] *See also Dalrymple v. United States*, 460 F.3d 1318, 1325 (11th Cir. 2006) ("The FTCA requires that *each* claim and *each* claimant meet the prerequisites for maintaining a suit"); *Muth v. United States*, 1 F.3d 246, 249 (4th Cir. 1993) ("[I]f there are multiple claimants in a matter, each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim").

forward statutory command"). Furthermore, "the statute makes no distinction between the individual claimant and the claimant who may, by reason of the facts giving rise to his claim, be a member of a class." *Nat'l Assoc. of Flood Insurers*, 520 F.3d at 23; *see also Lunsford*, 570 F.2d at 225 ("Neither the FTCA nor the regulations . . . make provisions for the filing of administrative claims against the United States on behalf of a class").

Here, Plaintiffs' complaint confirms that the unnamed members of the putative class have not filed separate administrative claims. Plaintiffs assert that the proposed class consists of 592 persons. Pls.' Compl. ¶ 40. Yet, Plaintiffs allege that only they have exhausted their administrative remedies. *Id.* ¶ 6. Further, they attach only six administrative claim forms (one for each named Plaintiff) to the complaint. *See id.* ¶ 6, Ex. A at 6–7, 11–12, 20–21, 36–37, 49–50, 58–59. And their attorneys' cover letter to the VA enclosing those forms confirms Plaintiffs' desire to "present[] claims . . .  on behalf of 592 putative class members." *Id.* ¶ 6, Ex. A at 2–3.

Plaintiffs' six administrative claims and their attorney's cover letter do not present the claims of unnamed class members. For starters, the federal courts are in complete agreement that each member of a proposed class must separately exhaust prior to the institution of an FTCA action. *See supra* n.10. Even if Plaintiffs' claims could exhaust on behalf of the unnamed members, they fail to satisfy the requirements of a "claim." *See Smoke Shop*, 761 F.3d at 786 (citing 28 C.F.R. § 14.2(a)). They do not identify each class member; they do not state a sum certain demand for each class member; and they do not provide evidence of Plaintiffs' authority to present claims on behalf of each class member. Indeed, Plaintiffs' claims do not reference a class at all.

Additionally, the FTCA's purposes would be defeated if Plaintiffs are permitted to exhaust on behalf of the putative class. First, "Congress wants agencies to have an opportunity to settle disputes before defending against litigation." *Smoke Shop*, 761 F.3d at 786. But "[a]bsent a filing by an individual claimant or his or her legal representative, a federal agency simply cannot know that it is negotiating with the proper party, or that any settlement would be final and relieve it of liability." *Cary*, 2007 WL 9683542, at *8. Second, if one class member's exhaustion is sufficient for the entire class, "this might well delay the litigation and burden the court congestion because, had some of the class members exhausted and had the agency settled their claims, the ultimate litigation would be quicker and less complex." *Founding Church*, 459 F. Supp. at 755. Third, the agency would lose the benefit of a sum certain demand, which is designed to increase the likelihood of prelitigation settlement by informing the agency of "exactly what the claimant seeks." *Id.* For instance, Plaintiffs have each made lofty sum certain demands of $50,000.00. But the demands of other class members may be more modest, which could increase the likelihood of a pre-litigation settlement with those individuals.

Finally, the Court should not allow Plaintiffs to place nearly 600 dental patients on record as having filed claims against the United States without their knowledge or consent. *See Cary*, 2007 WL 9683542, at *7. If Plaintiffs had consulted each class member beforehand, some may not have authorized the filing. "They may have been reticent to file a claim against the Government; they may have desired to avoid the vagaries of litigation altogether; . . . or they may have desired to avoid the unpleasant reminder." *Id.* Whatever the reason, Plaintiffs are in no position to make that decision for them. *Id.*

23

## CONCLUSION

The United States respectfully requests that the Court grant its motion and dismiss Plaintiffs' claims.

Dated this 19th day of January, 2018.

Respectfully submitted,

SCOTT C. BLADER
United States Attorney

By:

*s/David D. Conway*
DAVID D. CONWAY
Assistant United States Attorney
222 West Washington Ave., Suite 700
Madison, Wisconsin 53703
Telephone: (608) 264-5158
Facsimile: (608) 264-5724
david.conway@usdoj.gov