UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

CONSUELA SMITH-WILLIAMS,
FRED RIVERS, RICHARD MURPHY,
ROBERT RISTOW, ROGER SUHR,
and SALVADOR FUENTES, individually,
and on behalf of all similarly situated,

        *Plaintiffs,*                  Case No.: 17-CV-823

v.

THE UNITED STATES OF AMERICA,

        *Defendant.*
_____/

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

The Plaintiffs, Consuela Smith-Williams, Fred Rivers, Richard Murphy, Robert Ristow, Roger Suhr and Salvador Fuentes, individually and on behalf of all similarly situated, and by and through their undersigned counsel, hereby file this Memorandum in Opposition to the Defendant's Motion to Dismiss, and state as follows:

### Introduction

1. For over a year, between October 5, 2015 and October 21, 2016, the Defendant's employee, Dr. Schiller, exposed hundreds of veterans, the Plaintiffs and Putative Class Members, to the risk of infection with Hepatitis B, Hepatitis C, and HIV during their dental procedures. D.E.1 at 3.

2. Dr. Schiller failed to observe basic infection control practices such as hand washing, failed to wear personal protective equipment, and re-used dental burs meant for single use on multiple patients. *Id*.

3. These actions constituted breaches of established infection control standards established by the American Dental Association, the Occupational Safety and Health Administration, the

Center for Disease Control and Prevention, and the Department of Veteran's Affairs. D.E. 1 at 1.

4. When the Tomah facility managers finally learned of these ongoing breaches, they initiated a risk assessment and consulted with "infection control experts." Id at 4, Exhibit C.

5. It was determined that the patients were at risk of having been infected with deadly viruses such as Hepatitis B, Hepatitis C, and HIV. *Id.*

6. The Defendant sent a notification letter to each of these veterans admitting that infection control standards were breached. *Id.* "*This letter is to inform you that established infection control practices were not being followed by the dentist that treated you.*" *Id.*

7. The notification advised them that they were at risk of having been infected with Hepatitis B, Hepatitis C, and HIV. *Id.* "*The laboratory tests we are recommending you be tested for include the Hepatitis B virus, Hepatitis C virus, and the Human Immunodeficiency Virus (HIV).*" *Id.*

8. The Defendant warned the Plaintiffs and the Putative Class Members that they should come in for blood testing as soon as possible. *Id.* "*We encourage you to come in to have the recommended lab tests completed as soon as possible.*" *Id.*

9. The Defendant knew that this information would cause the Plaintiffs and Putative Class Members to suffer emotional distress. *Id.* "*As the Acting Medical Center Director, let me sincerely apologize for the concern that this notification may bring to you and your family.*" *Id.*

10. Thereafter the Plaintiffs and the Putative Class Members underwent blood testing and received blood test results indicating that they had not been infected with a virus during their dental procedure. D.E. 1 at 4-5.

11. From the time the Plaintiffs and the Putative Class Members received the notification letter until they received their blood test results indicating that they had not been infected with a deadly virus, they were forced to consider that they may have been infected with deadly viruses, may die as a result of having been infected, and/or may have unknowingly infected their loved ones with deadly viruses. D.E. 1 at 5.

12. On April 24, 2017, the Plaintiffs presented their administrative claim forms and written notification of a class claim seeking recovery on behalf of themselves and on behalf of their fellow veteran class members. *See* D.E. 1 Exhibit B.

13. The written notification provided by the Plaintiffs included a description of the incident, a demand for a sum certain, and advised the Defendant that the claim was being asserted on their behalf and on behalf of the Putative Class Members they sought to represent. *See* D.E. 1 Exhibit A at 1-2.

14. The Plaintiffs' written notification advised the Defendant that it knew the identity of each Putative Class Member, and had contact information for each Putative Class Member, as it previously sent each of them a letter notifying them that they may have been infected with a deadly virus. *See Id* Exhibit C.

15. The Plaintiffs also advised the Defendant that it was, and is, in possession of all of the Plaintiffs and Putative Class Members' medical records. See D.E. 1 Exhibit A at 1-2.

16. The Defendant failed to respond to the Plaintiffs and Putative Class Members' claims within six months. See D.E. 1 at 2.

17. On November 1, 2017, Plaintiffs filed this action against the Defendant under the Federal Tort Claims Act seeking damages for negligent infliction of emotional distress. See D.E. 1.

18. On January 19, 2018, the Defendant filed its Motion to Dismiss the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), to which the Plaintiffs now respond. *See* D.E. 9.

## Memorandum of Law

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. *See Firestone Financial Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When analyzing the sufficiency of a complaint, the Court construes it in the light most favorable to the plaintiff, accepts well-pleaded facts as true, and draws all inferences in the plaintiff's favor. *See Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529, 533 (7th Cir. 2011). To state a claim, a complaint must first provide " a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bonnstetter v. City of Chicago*, 811 F.3d 969 (7th Cir. 2016). The statement of the claim must sufficiently give fair notice of what the…claim is and the grounds upon which it rests" to the defendants. *Id* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

## Argument

In its Motion to Dismiss, the Defendant argues that the Plaintiffs' negligent infliction of emotional distress claims are not cognizable claims under Wisconsin law. D.E. 9 at 8. This is an incorrect statement of the law. Negligent infliction of emotional distress claims are recognized in this State. *See Camp ex rel. Peterson v. Anderson*, 2006 WI App 170, 295 Wis. 2d 714, 721 N.W.2d 146 providing: "…negligent infliction of emotional distress is an actionable tort in Wisconsin…" *Id.* 295 Wis. 2d at 726. *See also Leibhart v. SPX Corporation*, 2017 WL 5054730 (W.D. Wis. 2017) providing: "Plaintiffs suing for negligent infliction of emotional distress must prove the same elements as any other negligence claim."

4

**I.  The Plaintiffs have stated a claim for Negligent Infliction of Emotional Distress.**

To set forth an actionable claim of negligence in Wisconsin, plaintiffs must establish four elements: (1) a duty of ordinary care owed by the defendant, (2) breach of that duty, (3) causation, and (4) actual loss or damage. *See Jackson v. McKay-Davis Funeral Home et al*., 830 F. Supp. 635, 654 (E.D. Wis. 2011). *See also Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994), holding that a plaintiff claiming negligent infliction of emotional distress must prove these elements *regardless of the fact situation in which the claim arises* (emphasis added). *Id* at 632. Plaintiffs suing for negligent infliction of emotional distress under Wisconsin law must also prove that their emotional distress was severe. *Liebhart*  at *5 citing *Terry v. Journal Broadcast Corp.*, 2013 WI App 130, 351 Wis. 2d 479, 514, 840 N.W.2d 255.

In their Complaint, the Plaintiffs allege: (1) that the Defendant owed the Plaintiffs and the Putative Class Members a duty to use the degree of skill, care and judgment which a reasonable healthcare provider would use; (2) that the Defendant breached its duty by failing to use the requisite degree of care and skill, and by: (i) using unsterile dental equipment, (ii) failing to observe basic infection control practices such as hand washing, (iii) breaching infection control standards, and by; (iv) failing to adequately train and supervise its employees; (3) that the Plaintiffs and Class Members' injuries were as a direct and proximate result of the Defendant's negligent conduct, and; (4) that the Plaintiffs suffered severe emotional distress as they were forced to consider that they might die from a deadly virus or may have unknowingly infected their loved ones. D.E. 1. The Plaintiffs have thus alleged all that is required to state a claim for negligent infliction of emotional distress in Wisconsin.

Because the Defendant's negligence is so apparent in his case, it argues that even if negligence is found, the Court should bar the Plaintiffs' claims based on public policy. D.E. 9 at 9.  Because Wisconsin follows the universal duty formula of the dissent in *Palsgraf v. Long*

*Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928), the concepts of foreseeability and duty place no limits on the scope of a defendant's liability. *Bowen* at 644 (citing *Observe v. Montgomery*, 203 Wis. 223, 234 N.W. 372 (1931)). In fact, "once it has been determined that a negligent act has been committed and the act is a substantial factor in causing the harm, the question of duty is irrelevant and a finding of non-liability can be made only in terms of public policy." *Rockweit by Donahue v. Senecal*, 197 Wis. 2d 409, 425, 541 N.W.2d 742, 749 (1995).

There is no reason for a public policy or legal cause determination unless the defendant is actually liable. See *Stewart v. Wulf*, 85 Wis. 2d 461, 476, 271 N.W.2d 79, 85 (1978). Thus, "it is generally better procedure to submit negligence and cause-in-fact issues to the jury before addressing legal cause." Id., at 654, 517 N.W.2d at 443. It must be emphasized that public policy considerations are an aspect of legal cause, not a substitute for a cause-in-fact determination. See *Bowen*, 183 Wis. 2d at 443, 517 N.W.2d at 439.

In *Alvarado v. Sersch*, 2003 WI 55, 262 Wis.2d 74, 662 N.W.2d 350, the Wisconsin Supreme Court overturned a circuit court's premature grant of summary judgment on public policy grounds. That case involved allegations of negligence against a landlord and property management company that failed to remove a fireworks device left in a unit or to notify the new tenant of the device. Plaintiff, thinking it was a candle, lit it, causing injury. The circuit court granted summary judgment on public policy grounds and this Court affirmed. By a 4-2 vote, the Supreme Court reversed. The court noted that "[this] is not one of those simple cases where public policy can be used to limit liability before a finding of negligence." Id., ¶ 15, 262 Wis. 2d at 82, 662 N.W.2d at 354.

It continued, "Findings as to actual negligence, damages and the causal relationship between them would be material and helpful in evaluating the public policy considerations." Id., ¶ 25, 262 Wis. 2d at 87, 662 N.W.2d at 356. It noted that "Neither the court of appeals nor the circuit court had

the benefit of a full presentation of facts or of a jury's verdict on negligence before limiting liability." Id., ¶ 28, 262 Wis. 2d at 88, 662 N.W.2d at 356.

In its motion, Defendant seeks dismissal of the case on the pleadings, not after trial, let alone discovery. There are no facts available to the court to weigh using the Bowen factors. If there is a public policy defense to the Plaintiffs' claims, it should be presented only after the facts as to the Defendants' culpability, and the damages suffered by the Plaintiffs, can be fully presented to the court.

Even if the case was in a procedural posture to perform a public policy analysis, the defense should be rejected. In *Bowen*, the Wisconsin Supreme Court held: "the court determines whether considerations of public policy relieve the defendant of liability in a particular case." *Id* at 655. The public policy considerations are:

> (1) whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; or (6) whether allowance of recovery would enter a field that has no sensible or just stopping point. *Id.*

The court in *Bowen* stated "when it would shock the conscience of society to impose liability, the courts may hold as a matter of law that there is no liability." *Id*. In the instant case, it would hardly shock the conscience of society to hold the Tomah VA accountable for failing to provide safe and adequate healthcare to the veterans of this country's armed forces.

In *Bowen*, the court considered whether public policy barred a bystander claim for negligent infliction of emotional distress where the Plaintiff witnessed the aftermath of an automobile accident in which her son was killed. *Id* at 631. The court found that to hold the negligent driver responsible for the plaintiff's emotional injury was neither too remote, nor out of

proportion to his allegedly negligent driving, nor did it appear too extraordinary that such negligence would have brought about the emotional harm. *Id* at 659.  The court reasoned that it is not unusual for a parent to suffer severe emotional distress in those circumstances. *Id*. In this case, as in *Bowen*, it is not too remote to consider that an ongoing breach of infection control standards would place the Plaintiffs and the Putative Class Members at risk of infection with deadly viruses, and it is not out of proportion with the Defendant's negligent conduct to hold the Defendant responsible. Further, it was not too extraordinary that the Defendant's negligence would bring about the Plaintiffs' and the Putative Class Members emotional distress. In fact, it was foreseeable. Finally, it is not unusual for someone to suffer severe emotional distress upon learning that they may have been infected with a deadly virus.

The court in *Bowen* went on to hold that allowing the plaintiff to recover for her severe emotional suffering, under the circumstances, did not place an unreasonable financial burden on the alleged tortfeasor; that the circumstance guaranteed the geniuses of her claim, and that; allowing her to recover did not raise the "specter of unlimited liability to tortfeasors. Although discovery in the present case has not yet commenced, it is clear at this early stage that, as in *Bowen*, permitting the Plaintiffs' claims will not place an unreasonable financial burden on the Defendant. Instead, it will prompt the Defendant  to follow infection control standards in the future. Further, the circumstances of this case guarantee the genuineness of Plaintiffs' claims where infection control standards were breached and the Defendant admitted that the Plaintiffs were at risk for infection with deadly viruses. D.E. 1 at 3, Exhibit C. Finally, permitting these claims will not raise the specter of unlimited liability, it will permit claims where there is an actual breach of the standard of care and an acknowledged risk of infection with deadly viruses.

For more than 20 years, Wisconsin courts have consistently applied the *Bowen* public policy factors in negligent infliction of emotional distress cases to establish the authenticity of the

claim an ensure the fairness of the financial burden placed on the negligent defendant. See *Bowen* 655. In *McKay-Davis*, the court considered the claims of a mother and daughter who sought damages for the negligent handling of their relative's remains. The Court found that the defendant mortuary did not owe the plaintiffs a fiduciary duty, but did find that the duty of ordinary care was breached when the defendant failed to require a signature upon delivery of the remains. *Id* 830 F. Supp. at 655.  In Wisconsin, an act or omission is negligent if the actor should reasonably have foreseen a resulting injury. *McKay-Davis* at 654. The court found that the plaintiffs had stated a claim for negligent infliction of emotional distress and after considering the *Bowen* public policy factors deferred ruling on them until the resolution of liability at trial.

The court also applied the *Bowen* public policy factors in *Camp*. In that case, a child "who was threatened with a feces-covered cattail, and who witnessed a minor fatally injure his dog, brought suit against the family of the minor alleging negligent infliction of emotional distress under the theory of negligent supervision. *Id* 295 Wis. 2d at 717.The court found that the child did not have a bystander claim for negligent infliction of emotional distress as a result of witnessing the fatal injury to his dog, but did have a direct claim for negligent infliction of emotional distress as a result of having been chased and threatened with a feces-covered cattail. *Id* at 725-726.The court remanded the case to the Douglas County Circuit Court, where the trial court held that the plaintiff had stated a claim for negligent infliction of emotional distress under Wisconsin law. See the court's July 30, 2008 Order in *Camp ex rel. Peterson v. Anderson*, Douglas County Circuit Court Case No. 02-CV-29. It applied the *Bowen* public policy factors and permitted the claim to proceed towards a trial on the merits.[1] *Id.*

---

[1] See also *Day v. Spectrum Brands Holdings, 2015 WL 6143481(W.D. Wis. 2015)* where this Court applied the *Bowen* factors to preclude the claim of a plaintiff who alleged that the operating instructions provided along with his electric shave were inaccurate. *Id* at *1.

In this case, the Defendant told the Plaintiffs that "infection control standard weren't followed" during their dental procedures; that the Defendant has consulted with "infection control experts"; to come in "as soon as possible" for blood testing, and; that they may have been exposed to infection with Hepatitis B, Hepatitis C and HIV. See D.E. 1, Exhibit C. However, the Defendant now characterizes the Plaintiffs' claims of severe emotional distress as spurious and argues that there was no scientific basis for the Plaintiffs' fears. D.E. 9 at 14. The Defendant analogizes this case to *Babich v. Waukesha Memorial Hospital*, 205 Wis. 2d 698, 556 N.W.2d 144 (Ct. App. 1996). D.E. 9 at 11.

In *Babich*, the plaintiff was stuck with a hypodermic needle that was mistakenly left in her bed linens. *Id* at 701. She feared that she would contract AIDS based on knowledge she gathered from the public media. *Id* at 703. The defendant argued that her fears were unreasonable and that her claims should be dismissed on public policy grounds. *Id*. The court began by examining what it termed "needle stick cases," and found that these cases generally arise when a plaintiff is "accidentally and unexpectedly wounded by a needle." *Id*. The court examined whether the public policy factors espoused in *Bowen* barred the plaintiff's claims and adopted a "proof of contaminated source" standard for "needle stick cases." *Id*. This rule requires "plaintiffs seeking compensation for emotional distress arising out of needle stick injuries (and related puncture wounds) to prove that the device had previously been exposed to a contaminated source. *Id* at 705-706.

The court applied the *Bowen* public policy factors and determined that the plaintiff's injuries were out of proportion to the defendant's potential culpability. *Id* at 707. It reasoned that even if the defendant was "carless in its handling of such needles, it was not recklessly disregarding it patients safety because such needles do not pose a significant health risk." *Id*. Next it found that allowing the claim to move forward would place an unreasonable burden on the

future defendants. *Id.* "If we were to impose liability on hospitals...they would instigate precautions to prevent such injuries…such precautions would be a waste of resources…because those extra dollars would not improve overall patient safety." *Id* at 708.  Finally, the court found that permitting the plaintiff to pursue her claim would expose the courts to more "fear of AIDS" or "AIDS phobia" claims with scientifically unfounded fears and that these could even occur in other contexts such as in retail stores.

*Babich* is clearly distinguishable from the instant case. In *Babich*, the plaintiff feared contracting AIDS based on information she gathered from the public media. That fear was not based on scientific evidence and was found to be unreasonable.[2] The plaintiff in *Babich* "could only prove that she was punctured by an errant needle and she was in the hospital." *Id* at 708. Here, the Defendant told the Plaintiffs and Putative Class Members that "infection control standard weren't followed" during their dental procedures. D.E. 1, Exhibit C. It conducted a risk assessment and consulted with "infection control experts." D.E. 1 at 4, Exhibit C. The Plaintiffs and Class Members were told to come in "as soon as possible" for blood testing, and that they may have been exposed to infection with Hepatitis B, Hepatitis C and HIV. D.E. 1, Exhibit C. Unlike the plaintiff in *Babich*, the Plaintiffs' fear certainly was reasonable. It was based on information provided by the Defendant after it conducted a risk assessment and consulted with infection control experts. D.E. 1 at 4, Exhibit C.

*Babich* is further distinguishable because in that case there was an "accidental and unexpected wounding" with a needle. *Babich* at 701. Here, by contrast, the Plaintiffs allege that the infection control standards established by the American Dental Association, the Occupational Safety and Health Administration, the Center for Disease Control and Prevention, and the

---

[2] See *Alsteen v. Wauleco, Inc.*, 335 Wis. 2d 473 (Wis. Ct. App. 2011) "The court did not suggest that the contaminated source rule could apply in non-needle stick cases." *Id* at 483.   The issue was whether public policy barred her emotional distress claim because her fear of HIV infection was unreasonable.

Department of Veteran's Affairs were breached for more than a year. D.E. 1 at 3-5. The court in *Babich* found that the plaintiffs injuries were out of proportion to the defendant's culpability as it was not "recklessly disregarding its patient's safety." *Id* at 707. The Plaintiffs in this case allege that the Defendant recklessly disregarded the safety of hundreds of its patients. D.E. 1 at 3. The court in *Babich* expressed concern that permitting the plaintiff's claim would place an unreasonable burden on future defendants, and cause them to divert resources away from patient safety to prevent liability for needle sticks. *Babich* at 707-708. In this case, it would not place an unreasonable burden on the Defendant to ensure that it adheres to infection control standards and provides safe and adequate healthcare for veterans of our country's armed forces. Finally, permitting the Plaintiffs' claims would not create the flood of "AIDS phobia" cases that the *Babich* court feared back in 1996. Rather, it would permit claims in which plaintiffs have a genuine fear of having been infected with deadly viruses. Public policy should not bar the Plaintiffs claims. Rather, it should favor adherence to infection control standards and should favor safe and adequate healthcare for this country's veterans.

The Defendant states in its motion that the Plaintiffs' claims fail because they have not alleged a "contaminated source" as required by *Babich*. D.E. at 11. Incidentally, *Babich* did not require the plaintiff to allege a contaminated source; it required her to prove it. *See Babich* at 709. In any event, there are several problems with this argument. First, *Babich* only applied to needle stick cases and this is not a needle stick case.[3] The Plaintiffs in this case do not allege to have been stuck with a needle. See D.E. 1.They allege to have been exposed to the risk of infection during their dental procedures as a result of the Defendant's employee not following basic infection control practices such as hand washing and wearing personal protective equipment and

---

[3] The Defendant cites to *Babich* as stating that the rule can apply in a variety of contexts, however, see *Alsteen* at 483. "Thus, the court's "variety of contexts' statement referred to the fact that needle stick injuries can arise outside of the healthcare context. The court did not suggest that the contaminated source rule could apply in non-needle stick cases."

the improperly re-useing single use dental burs. *See Id* at 3. *See also Alsteen v. Wauleco, Inc.*, 2011 WI App 105, 335 Wis. 2d 473, 802 N.W.2d 212. "The court did not suggest that the contaminated source rule could apply in non-needle stick cases." *Id* 335 Wis. 2d at 483.

Second, in order to state a claim for relief,  the Plaintiffs' Complaint only needs to give the Defendant a fair notice of the nature of the claims against it and be 'plausible on its face' as required by *Iqbal* and *Twombly*. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010). The Seventh Circuit has repeatedly emphasized that aside from those few claims specified in Fed. R. Civ. P. 9(b), there are no heightened rules of federal pleading. *See Schwartz v. Bay Industries, Inc.,* 274 F. Supp. 2d 1041, 1051 (E.D. Wis. 2003) (citing *Tierney v. Vahle,* 304 F. 3d 734 (7th Cir. 2004)). No more is required than Rule 8's notice pleading minimum. *Schwartz* at 1051, citing *Alvarado v. Litscher*, 267 F. 3d 648, 651 (7th Cir. 2001). Here, the Plaintiffs specifically alleged that they were exposed to the risk of infection with deadly viruses, they attached Defendant's letter admitting as much and laid out the facts supporting their claims. See D.E. 1. At this stage no further showing is required.

In crafting its argument, the Defendant ignores the breaches of basic infection control such as hand washing and the use of personal protective equipment and focuses instead on the re-use of dental burs, which it most likens to needle sticks. D.E. 9 at 15. It argues that the Plaintiffs fail to allege that the dental burs were contaminated and that the Plaintiffs fail to allege that the dental burs were a viable means of transmitting viruses. *Id*. Again, the Plaintiffs make it clear in their Complaint that they were exposed to the risk of infection with deadly viruses, D.E.1at 3, a fact which the Defendant admitted in its notification letter but now apparently denies. See D.E. 1, Exhibit C.  Further, even *Babich* didn't require the plaintiff to prove that the needle in her case was actually contaminated, (i.e. that the HIV virus was present on the needle); it required her to prove that it came from a contaminated source or was exposed to a contaminated source. See

*Babich* at 706. "requiring a needle stick victim to offer proof that the needle came from a contaminated source strikes a proper balance…" Compare e.g. *Majca et al v. Beekil*, 701 N.E.2d 1084, 1091 (Ill. 1998) requiring the plaintiffs to allege actual exposure to HIV, and *K.A.C., et al., v. Beson*, 527 N.W.2d 553, 557 (Minn. 1995) requiring actual exposure to HIV in order to satisfy the zone of danger test.[4]

Nevertheless, this case is still at the pleading stage. The Plaintiffs' Complaint "need not narrate all relevant facts or recite the law; all it has to do is set out a claim for relief." *See Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F. 3d 732 (7th Cir. 2014) (citing *Hrubec v. Nat'l R.R. Passenger Corp*., 981 F. 2d 962, 963 (7th Cir. 1992)). The Defendant would require this Court to apply a heightened pleading standard. However, the ordinary notice pleading standards of Rule 8, as clarified by *Twombly* and *Iqbal*, do not require the application of a heightened pleading standard. *See Twombly* at 559.

The Defendant goes on to argue that the Plaintiffs "allege that all class members tested negative, which if anything, indicates that the dental burs were not contaminated." D.E. 9 at 15. Here the Defendant misstates what was actually alleged. First of all, in drafting their Complaint Plaintiffs elected not to guess where Dr. Schiller's dental burs came from or where they were used prior to him bringing them to the Tomah VA. Second, the Plaintiffs allege that the 592 veterans who were eligible for class inclusion tested negative for "newly acquired active viral infections." D.E. 1 at 5. Some of the 592 may have had a pre-existing virus but would still fit the class definition due to their fear of contracting other viruses (e.g. someone infected with Hepatitis B would still suffer severe emotional distress upon learning that they may have been infected with HIV). In any event, the Plaintiffs did not allege that all of the 592 veterans who were eligible for

---

[4] See also *Vallier v. Louisiana Health Systems, Inc*., 722 So. 2d 418 ( La. App. 3rd Cir. 1998) where "The hospital performed no tests to determine if indeed there were any contagions present and accordingly, Plaintiff had no way of proving exactly what was or was not present on the instruments. Such a burden should not be placed on a patient who is very likely in the worst position to arrive at such proof absent actually contracting the virus." *Id* at 421.

class inclusion were virus free, and at the pleading stage the they only need to state a claim for relief that is "plausible on its face" as required by *Iqbal* and *Twombly*." *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010).

The Defendant draws comparisons between this case and *Majca* and *K.A.C.*, in which the plaintiffs also received notification letters advising them of their risk of infection. D.E. 9 at 14. However, in those cases, there was no breach of infection control standards and no breach of the standard of care. Compare with *Descoteau v. U.S*., 2009 WL 1491010 (D. Me 2009) permitting emotional distress claim where plaintiff received a notification letter advising him that devices used to perform prostate biopsies were not adequately sterilized or disinfected; *Beville V. Olean General Hospital*, 124 A.D. 3d 1412 (N.Y. 2015) permitting emotional distress claim where the plaintiff received a letter advising her that insulin pens may have been improperly re-used on multiple patients; *Alvarado v. U.S*., 2011 WL 13220755 (S.D. Fla. 2011) permitting emotional distress claims for patients who had an un-sanitized colonoscope used during their procedure and later received a notification letter; *Spann v. U.S*., 2012 WL 3776684 (S.D. Fla. 2012) permitting emotional distress claims arising from the same circumstances as *Alvarado*; *Vallier v. Louisiana Health System*, 722 So. 2d 418 (La. App. 3rd Cir. 1998) permitting claim for emotional distress where the instruments used during the plaintiff's surgery were not properly disinfected and she was later notified; *Andrew Frank et al., v. Broward General Medical Center*, Fla. 17th Circuit Case No. 10-25040 CACE (02) permitting claims for emotional distress and grating class certification where plaintiffs received a notification letter advising that saline bags had been re-used on multiple patients during chemical stress tests.

The Defendant cites to a string of cases pulled from the decisions in *Majca* and the *Pendergist v. Pendergrass*, 961 S.W. 2d 919 (Mo. Ct. App. 1998) and inserts them into its motion as support for its argument that this Court should apply an "actual exposure" requirement in

Wisconsin. But *Majca* and *Pendergass* were decided in the 1990s and the cases to which they cite are even older.  Some of these jurisdictions require plaintiffs to adhere to the "impact rule" or the "zone of danger" or "physical injury requirement" which may constrain those court's decisions and are no longer good law in Wisconsin. See *Bowen* at 652 providing "the zone of danger doctrine…while it appears to ally the court's apprehension of opening the door to fraudulent claims…its rigid application prevents redress in deserving cases. Its companion rules for fear of one's own safety and physical manifestation of emotional distress have the same effect." *See also K.A.C.*, at 559 (confirming Minnesota's adoption of the "zone of danger rule"). But those cases are of no import as the substantive law of Wisconsin applies in this case.

**II. The Plaintiffs Have Sufficiently Alleged Severe Emotional Distress**

In its motion, the Defendant argues that the Plaintiffs have failed to plausibly allege "severe" emotional distress. D.E. 9 at 17. It states that Plaintiffs only offer "threadbare recitals of severe emotional distress without any "factual enhancement" to render them possible. *Id*. In their Complaint, the Plaintiffs allege that they received substandard dental treatment which breached infection control standards. D.E. 1 at 3; That the Defendant completed a risk assessment and recognized that the Plaintiffs and Putative Class Members were at risk of having been infected with deadly viruses such as Hepatitis B, Hepatitis C, and HIV. *Id* at 4; That the Plaintiffs received a letter from the Defendant advising them to come in for blood testing "as soon as possible." *Id* at 4, *Exhibit A* at 4; And that during the time the Plaintiffs and Putative Class Members waited for their blood test results they were forced to consider that they may have been infected with a deadly virus, may die as a result of having been infected, and may have unknowingly infected their loved ones with deadly viruses. *Id* at 5. At this stage of the litigation, the Plaintiffs have properly pled all that is required by Fed. R. Civ. P. 8.

"Rule 8 reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *See Sheikh v. Grant Regional Health Center*, 2012 WL 2366232 (W.D. Wis. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)). In *Sheikh*, this Court found that the plaintiff plausibly alleged severe emotional distress where he alleged that false and disparaging information published about him on a national database precluded him from finding employment in his chosen profession. *Sheikh* at *5. In the instant case, it is certainly plausible that someone would suffer severe emotional distress upon learning that they may have been infected with a deadly virus. The Defendant knew it was plausible when it sent out notification letters which stated in part "*As the Acting Medical Center Director, let me sincerely apologize for the concern that this notification may bring to you and your family.*" D.E. 1, Exhibit C.

The Defendant makes the additional argument that "none contend that their emotional response was so extreme that it affected their relationships." D.E.9 at 17-18. However, the Plaintiffs, having already laid out the factual basis for their claims, specifically alleged that they "were forced to consider that they may have unknowingly infected their loved ones with a virus." D.E. 1 at 5. It is absurd to suggest that the fear of having transmitted a deadly virus to a family member would not affect the Plaintiffs' relationships.

### III. The Putative Class Members Have Exhausted Their Administrative Remedies

The Defendant argues in its motion that the Court should deny redress to hundreds of veterans who may not have the resources to bring claims on their own. The Defendant argues that the Putative Class Member's claims should be dismissed because they have purportedly failed to exhaust their administrative remedies pursuant to 28 U.S.C. §2675(a).  D.E. 9 at 18.  28 U.S.C. §2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency.

The Defendant cites *McLaughlin on Class Actions* §2:24, numerous older decisions and decisions from other jurisdictions for the proposition that "A district court does not have jurisdiction over putative class members who have not complied with FTCA's administrative claim… requirements." *Id* at 20. However, the Putative Class Members have exhausted their administrative remedies. *See Hoover v. Szymanski*, 2017 WL 1380638 (W.D. Wis. 2017) citing *Khan v. U.S.*, 808 F. 3d 1169 (7th Cir. 2015) "The Seventh Circuit applies this requirement loosely, requiring only that the written notification specify "facts plus a demand for money." *Id* at 1173. See also D.E. 1, Exhibit A at 2 (providing the factual support for putative class member's claims and demanding money damages). Further, the Seventh Circuit no longer treats administrative exhaustion as a jurisdictional prerequisite. *See Johnson v. U.S,* 2016 WL 3387156 (E.D. Ill. 2016) citing *Smoke Shop, LLC v. U.S.*, 761 F.3d 779 (7th Cir. 2014) "This is not a jurisdictional prerequisite, but rather a condition precedent to the plaintiff's ability to prevail." *Id* at 786.

The 7th Circuit has made clear that it no longer treats administrative exhaustion under 28 U.S.C. §2675(a) as a jurisdictional pre-requite to suit, therefore this Court does not lack jurisdiction over the Putative Class Members claims. See *Ortega v. U.S.*, 2016 WL 8732321 (N.D. Ill. 2016) citing *Smoke Shop, LLC v. U.S.*, 761 F.3d 779, 786 (7th Cir. 2014):

> "Several circuits consider section 2675(a)'s exhaustion requirement to define the court's subject matter jurisdiction over an FTCA action (citations omitted). The U.S. Court of Appeals for the Seventh Circuit, by contrast, has struck a different course and no longer treats §2675(a) as a jurisdictional prerequisite." *Id* at 786.

See also *Glade ex rel. Lundskow v. U.S.*, 692 F. 3d 718 (7th Cir. 2012) providing: "Obviously the federal courts are authorized to decide suits under the Federal Tort Claims Act; indeed, no other court system is. *Id* at 723. Since the requirement of exhaustion is not jurisdictional, it can be waived, or forfeited, or otherwise forgiven. *Id.*

The Defendant cites to *Commonwealth of Pennsylvania v. National Flood Insurers*, 520 F. 2d 11 (3rd Cir. 1975) for the proposition that "neither the FTCA nor the regulations…make provisions for the filing of administrative claims against the United States on behalf of a class." *Id* at 24.   This is one of many cases cited by the Defendant which considered exhaustion a jurisdictional pre-requisite, however the court's reasoning in that case is applicable here.[5]   The court held:

> "There is no conflict with 28 U.S.C. §2674 (United States to be liable as a private individual under like circumstances) since by statute unless a tort claims is first presented to the appropriate administrative agency the court lacks subject matter jurisdiction over the claim asserted against the United States. Thus the United States stands  in no different posture than a private individual against whom liability is sought to be asserted, but where the court lacks subject matter jurisdiction." *Id.*

Following the reasoning espoused by *National Flood Insurers*, the United States stands in the same posture as a private individual and, here in the Seventh Circuit, the Court has jurisdiction over the putative class members' claims. According to this reasoning, the Plaintiffs should be permitted to assert class claims against the United States as they would against any private individual.

With regard to the Commonwealth's claim of authority to present a class claims pursuant to Fed. R. Civ. P. 23, the court held:

---

[5] The Defendant also relies on *Cary et al., v. U.S.,* 2007 WL 9683542 (S.D. Cal. 2007), another case which also holds administrate exhaustion to be jurisdictional, for the proposition that the named Plaintiffs are asserting class claims on behalf of Putative Class Members who may not want to participate in this suit. D.E. 9 at 23-24.However, this argument fails to take into account that Fed. R. Civ. P. 23 allows a putative class member to opt out of a suit.

"Both 28 U.S.C. § 2675 and Fed. R. Civ. P. 23 are separate legislative enactments which, as we have indicated, are not inconsistent with each other, but rather can and should be construed harmoniously. Thus, if for no other reason than the failure of the individual claims to satisfy the jurisdictional requisites of the Federal Tort Claims Act, the Commonwealth is precluded from representing individual claimants in a class action." *Id* at 24.

In this case, the Court has jurisdiction and the United States can be sued just like any private individual. See *Lundskow* at 723. (Since the requirement of exhaustion is not jurisdictional, it can be waived, or forfeited, or otherwise forgiven). *See also* 28 U.S.C §2674. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." Therefore, the Plaintiffs should be permitted to assert class claims.

The Defendant points to 28 C.F.R. §14.2, and argues that the written notification provided by the Plaintiffs and Putative Class Members does not qualify as a claim for the purpose of administrative exhaustion. D.E. 9 at 19. 28 C.F.R. §14.2 defines a claim for the purposes of 2675(a) as: (1) notification of the incident; (2) a demand for money damages in a sum certain; (3) the title or legal capacity of the person signing; and (4) evidence of authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or *other representative* (emphasis added).

"The Seventh Circuit views these requirements not as jurisdictional but as definitional…" *See Slapak v. U.S.*, 2018 WL 706935 (S.D. Ill. 2018). "Thus there is room to tolerate technical shortcomings as long as the proper agency had the opportunity to settle the claim for money damages before the point of suit." *Id*.  *See Smoke Shop, LLC* at 787. (Providing that would be FTCA plaintiffs do not have to comply with "every jot and title" of the regulation). *See also Khan*

at 1173.  "All that must be specified therefore is facts plus a demand for money; if those two things are specified, the claim encompasses any cause of action fairly implicit in the facts."

In this case, the Plaintiffs' state that the Putative Class Members "were negligently exposed to the risk of infection from Hepatitis B, Hepatitis C, and HIV during their dental procedures at the Tomah VA Medical Center. D.E. 1, Exhibit A at 1. The Plaintiffs also demand $50,000.00 as compensation for the thier injuries and $50,000.00 on behalf of each of the Putative Class Members for a total sum certain of $29,600,000.00." *Id*. The Plaintiffs' presented facts and demanded money damages, which is all that the Seventh Circuit requires.

The Plaintiffs' specifically informed the Defendant that they were bringing claims on their own behalf and on behalf of the Putative Class Members. *Id*. To the extent that the Defendant argues the Plaintiffs didn't provide evidence of their authority, it is important to note that none was requested. Compare e.g., *Kanar* at 531 where an attorney's failure to comply with an agency's request that he provide proof of his capacity to represent the claimant hindered the settlement process, with *Slapak*, where the Defendant did not call attention to the plaintiff's lack of proof of authority. *Id* at *5. In *Slapak*, the decedent's relative lacked actual capacity to represent his estate at the time she filed an administrative claim. *Id*.  The court found that she was eligible to be the administrator at all relevant times and her failure to be appointed before filing her administrative claim was curable error. *Id*. She was later appointed administrator of the decedent's estate by the probate court. *Id*. As members of the defined class with standing to bring this action, Plaintiffs are certainly eligible to represent the Putative Class Members. Any lack of evidence of authority can be cured by their appointment as class representative pursuant to Fed. R. Civ. P. 23.[6]

---

[6] "The failure to provide evidence of capacity and authority with the original claim is not fatal if, upon request from the agency appropriate documentation is provided and the settlement process is not frustrated." *Slapak* at *4. Here the Department of Veteran's Affairs never requested that the plaintiffs provide evidence of their authority

The Defendant argues that a claim cannot be presented in an "attorney's cover letter". D.E. 9 at 22. In *Ortega*, as in this case, the government argued that the written notice provided by the plaintiff was not sufficient to constitute a claim. However, the court held:

> "This is expressly contrary to Seventh Circuit precedent. See e.g., *Khan*, 808 F. 3d at 1171-72 (treating a letter complaining about treatment by federal officers as a claim); *Smoke Shop*, 761 F. 3d at 787 (finding that plaintiff's Federal Rule of Criminal Procedure 41(g) motion "certainly satisfied" three requirements of FTCA claim but failed to demand money damages); 28 C.F.R. 14.2(a) (defining a claim as "an executed Standard Form 95 *or other written notification of an incident*")(emphasis added)….the Seventh Circuit only requires that the government receive notice of a claim with a demand for money damages in order to satisfy section 2675(a)'s exhaustion requirement…" Id at *5.

The Defendant also argues the Putative Class Members' claims cannot be presented in one document and that they must each exhaust their administrative remedies separately. D.E. 9 at 21. It states, "the federal courts are in complete agreement that each member of a proposed class must separately exhaust prior to institution of an FTCA action." D.E. 9 at 22. For support it cites to numerous older decisions from outside of the Seventh Circuit which take a much more formal approach to administrative exhaustion and which still hold it to be a jurisdictional prerequisite. See *Id* at 20. The Defendant also cites to *In re Katrina Canal Breaches Conso. Litig*., 2009 WL 9683542 (E.D. La. 2009) for support. *Id*. However, in that case, the court held:

> "a class action can be maintained under the FTCA if each of the claimants have individually satisfied all of the jurisdictional requirements. A class action can also be maintained if a class claim has been filed which names the individual claimants, assets and establishes authority of the named claimant (or claimants to present claims on behalf of the unnamed class members, states the total amount of the claim for the entire class and otherwise satisfies the jurisdictional requirements. *In re Katrina* at *5 citing *Lunsford v. U.S.,* 570 F.2d 221, 227(8th Cir. 1977)

---

to represent the class and as is clear by its argument, never intended to settle these claims. It cannot now claim that the settlement process was frustrated.

In this case, the Plaintiffs written notification stated that the class consists of the 592 veterans who received the Defendants' notification letter informing them of their exposure the risk of infection with deadly viruses. D.E. 1, Exhibit A at 1. It advised the Defendant that it was already in possession of the names, contact information and medical records for each of these class members. *Id* at 2. It stated that the claims were being brought by the Plaintiffs individually and on behalf of the Putative Class members. *Id*. And it stated the total amount of the demand for the class. *Id* at 2.  Some of the requirements espoused by the court in *In re Katrina* for administrative exhaustion are not required in the Seventh Circuit, or are not so strictly construed, such as evidence of authority.[7] However, it is clear from the court's ruling that class claims can be presented in one document. *See also Salt River Pima-Maricopa Indian Community v. U.S*., 266 F.R.D. 375 (D. Ariz. 2010) (strictly construing administrative exhaustion as jurisdictional, but still granting class certification where the President of the community's letter satisfied the "minimal notice" required to satisfy the administrative exhaustion for the class; written notice and a value on the claim.) *Id* at 377.

The Defendant cites to *Barbee v. U.S*., 2005 WL 2429820 (W.D. Wis. 2005) for the proposition that each claimant must separately exhaust their administrative remedies. D.E. 9 at 21. In *Barbee*, the government obtained dismissal of the injured plaintiff's wife as a party because she had not filed a claim for consortium. *Id* at *3. However, *Barbee* is distinguishable from the instant case. In *Barbee* this Court held that administrative exhaustion is jurisdictional, which is longer good law in the Seventh Circuit. *Id*. Further, the injured plaintiff's claim never mentioned

---

[7] See *Smoke Shop, LLC* at 788. "By its terms the regulation demands slightly more. See 28 C.F.R. §14.2(a) (including the additional requirement that the person signing establish her title and authority to pursue the claim.) In *Kanar* we reasoned that §2675(a) does not require would be FTCA plaintiffs to comply with "every jot and tittle" of the regulation. 118 F. 3d at 530. So long as the proper agency had the opportunity to settle the claim for money damages before the point of suit, we said, technical deficiencies in the administrative claim could well be a case of "no harm, no foul."

his wife's consortium claim, and his wife never presented written notification of a claim. *Id*. So in *Barbee* a claim was never presented. In *Ortega*, a more recent case, the Plaintiff's mother failed to include her own name in the Plaintiffs claim form, but was permitted to proceed with her own claim where she alleged facts and made a demand for money. *Id* at *6. The court held that "to find otherwise would be endorsing pure formalism." *Id*. A claimant need only specify 'facts plus a demand for money; if those two things are specified, the claim encompasses any cause of action fairly implicit in the facts." *Id*. Citing *Khan* at 1173. Here the Putative Class Members claims have properly been presented. The facts of the incident were fully described and demand for a sum certain was made.  D.E. 1, Exhibit A.

In *Smoke Shop, LLC*, the court held: "So long as the proper agency had the opportunity to settle the claim for money damages before the point of suit, we said technical deficiencies in the administrative claim could well be a case of "no harm, no foul." *Smoke Shop, LLC* at 788. In evaluating whether settlement was hindered or thwarted, courts look at extrinsic evidence regarding how the claim was handled pre-suit. See *Kanar* at 531. See also *Slapak* at *5.

The court in *Smoke Shop, LLC*, found that the plaintiff's rule 41(g) motion satisfied all of the requirements for a claim except the demand for money damages. *Id* at 787. It reasoned that this omission would only be fatal if it can be said to have "hindered" or "thwarted" the settlement process "that Congress created to preclude litigation." *Id*. The court found that without an actual claim for money damages the government could not make an informed assessment of the claim and that the plaintiff may have led the government to believe that it was forgoing civil litigation." *Id*. Here, by contrast the class claim demands a sum certain and makes clear that the Plaintiffs and the Putative Class Members are asserting negligence claims and seeking damages for emotional distress. D.E. 1, Exhibit A at 1-2. The Plaintiffs' written notification further states:

"The Department of Veterans Affairs possesses the names, contact information and medical records of each putative class member and is capable of settling all of the putative class member's claims. The named claimants are willing to engage a third party administrator to provide notification of a proposed settlement to each putative class member." *Id* at 2.

From a practical standpoint, the Defendant could have settled this case pre-suit. See *Id*. It was provided with sufficient facts investigate the claims; it was provided with a demand for a sum certain; and the Defendant already knew the identity of each Putative Class Member. *Id*. A settlement figure could have been negotiated, notice to each Putative Class Member could have been provided and the parties could have sought court approval for a class settlement that was fair and adequate.[8] But the Defendant did not want to settle these claims, individually or as a class. It is clear from the arguments in its Motion to Dismiss that it believed these claims were spurious and that it would prevail on the merits.[9] *Id*. If there were any omission in the presentment of the Putative Class Members claims they could not have thwarted settlement because the Defenant clearly had no intention of settling.

The foregoing notwithstanding, at this stage the Plaintiffs should not be required to prove, or provide extrinsic evidence, that they have exhausted their administrative remedies. Fed R. Civ. P. 9(a) provides:

"Except when required to show that the court has jurisdiction, a pleading need not allege a party's capacity to sue or be sued; a party's authority to sue or be sued in a representative capacity; or the existence of an organized association of persons that is made a party".

It is clear that administrative exhaustion is not a jurisdictional requirement in the Seventh Circuit. See *Smoke Shop, LLC* at 786. It is also clear that the Plaintiffs are not required to allege a

---

[8] Compare with *Cary* at *4 in which the Putative Class Members failed to present a claim and the court held administrative exhaustion to be jurisdictional.

[9] See *Ortega* at *6 in which the court rejected the government's argument that a more detailed claim would have allowed it to consider settlement. "In addition, it appears that HHS *did* investigate Plaintiff's claim and determined that it did not want to settle with her because it believe it would prevail on the merits." *Id*.

capacity or authority to sue pursuant to Rule 9(a). Rule 9(c) further provides: In pleading

conditions precedent, it suffices to allege generally that all conditions precedent have occurred or

been performed.  In their Complaint, the Plaintiffs properly alleged that "All conditions precedent

to the filing of this action have occurred, have been waived, or have otherwise been satisfied."

D.E.1 at 2.

WHEREFORE for all of the foregoing reasons, the Plaintiffs Request that this Court

deny the Defendant's Motion to Dismiss.

Respectfully Submitted,

By:

*s/ William Rieder*
William Rieder, Esq.

William T. Rieder, Jr., Esq.
The Downs Law Group
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Telephone No.: (305) 444-8226
Facsimile No.: (305) 444-6773
wrieder@downslawgroup.com
FL Bar No. 0044834
*Co-Counsel for the Plaintiffs*

Matthew A. Biegert., Esq.
Doar, Drill & Skow
103 North Knowles Avenue
P.O. Box 388
New Richmond, WI 54017
Telephone No.: (715) 246-2211
Facsimile No.: (715) 246-4405
mbiegert@doardrill.com
WI Bar No. 1000368
*Co-Counsel for the Plaintiffs*

C.J. Kishish, Esq.
Kishish Law Group
1555 Southcross Drive West

Burnsville, Minnesota 55306
Telephone No.: (888) 402-5552
ckishish@kishishlawgroup.com
MN Bar No. 0229805
*Co-Counsel for the Plaintiffs*