IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CONSUELA SMITH-WILLIAMS, FRED
RIVERS, RICHARD MURPHY, ROBERT
RISTOW, ROGER SUHR, and SALVADOR
FUENTES, on behalf of themselves individual
and others similarly situated,

               Plaintiffs,

v.

UNITED STATES OF AMERICA,

               Defendant.

OPINION AND ORDER

17-cv-823-wmc

---

This proposed class action is brought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ("FTCA"). The named plaintiffs seek to represent a class of individuals that was notified of lapses in infection control procedures after receiving dental treatment at the Tomah VA Medical Center. The United States now moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. #8.) For the reasons explained below, that motion to dismiss will be denied.

BACKGROUND[1]

As veterans of the United States military, plaintiffs were all treated by Dr. Tomas Schiller at Tomah VA Medical Center's Dental Clinic between October 5, 2015, and October 21, 2016. Dr. Schiller allegedly: (1) used unsterile dental burs; (2) re-used single use dental burs on multiple patients; (3) sprayed an inappropriate disinfectant on unsterile

---

[1] For purposes of this motion, the court accepts as true all well-pleaded facts alleged in plaintiffs' complaint and draws all reasonable inferences from those facts in plaintiffs' favor.

dental burs between procedures; (4) did not follow basic infection control procedures such as hand washing; and (5) did not wear personal protective equipment.[2] This conduct violated infection control and prevention standards established by the American Dental Association, Occupational Safety and Health Administration, Center for Disease Control and Prevention, and Department of Veterans Affairs.

As early as December 2015, a number of the employees at Tomah VA were allegedly aware of Dr. Schiller's conduct, but no action was taken until after October 20, 2016, when managers confronted Schiller about his practices following a report by a substitute dental hygienist to the acting chief of dental services. At that time, Schiller admitted to re-using unsterile dental burs, but claimed that he believed it was a common practice.

After completing a risk assessment, the Tomah VA sent a notification letter to plaintiffs, which stated:

> Our records indicate that between October 2015 and October 21, 2016 you were seen as a patient in the Tomah VA Medical Center's Dental Clinic for a dental procedure. This letter is to inform you that established infection control procedures were not being followed by the dentist that treated you. While we believe your risk of infection is low, we recommend you come in to be tested. We want to emphasize that receiving this letter does not mean that you were infected but we are taking extra steps to be certain. The laboratory tests we are recommending you be tested for include the Hepatitis B virus, Hepatitis C virus, and the Human Immunodeficiency Virus (HIV).

(Nov. 29, 2016 Letter, Ex. C (dkt. #1-6) 2.) After undergoing blood testing for Hepatitis B, Hepatitis C, and HIV, the potential class members waited approximately two weeks for

---

[2] A dental bur is a motorized handheld device to cut or abrade tooth structure, bone, restorative materials, and other dental material. (Compl. (dkt. #1) ¶ 9, n.1.)

their results. No one was infected. Those who received dental care in the previous six months had to wait another six months for more blood testing, as it takes that long for some infections to become detectable. No one from this group was infected either.

Nevertheless, the potential class members claimed to have suffered severe emotional distress between their receipt of the notification letter and their blood test results, as "they were forced to consider that they may have been infected with deadly viruses, may die as a result of having been infected, and/or may have unknowingly infected their loved ones with deadly viruses." (Compl. (dkt. #1) ¶¶ 25-26.)

PROPOSED CLASSES

Plaintiffs propose a class under Fed. R. Civ. P. 23 to encompass:

> All Tomah VA Medical Center patients who received dental care between October 2015 and October 2016, received a letter from the Tomah VA Medical Center informing them of their potential exposure to Hepatitis B, Hepatitis C, and HIV and subsequently tested negative for newly acquired active viral infections.

(Compl. (dkt. #1) ¶ 27.) Plaintiffs also propose a sub-class of patients who received dental care during the six-month period preceding the mailing of the notification letter, as they were made to wait an additional six months for conclusive test results:

> All Tomah VA Medical Center patients who received dental care between October 2015 and October 2016, received a letter from the Tomah VA Medical Center informing them of their potential exposure to Hepatitis B, Hepatitis C, and HIV, subsequently tested negative for newly acquired active viral infections, and were forced to wait an additional six months for further blood testing to confirm that they were not infected with Hepatitis B, Hepatitis C, and HIV.

(*Id.* at ¶ 28.) Plaintiffs exclude defendant's officers, directors and members of their

immediate families from the class. (*Id*. at ¶ 29.)

OPINION

Plaintiffs assert claims for (1) negligent infliction of emotional distress and (2) negligent training, supervision and retention. Defendant argues the pleadings are insufficient to support a finding of proximate causation or severe emotional distress on either claim. Alternatively, defendant argues that all *unnamed* plaintiffs failed to exhaust their administrative remedies as required by the Federal Tort Claims Act. The court addresses each of these arguments below.

I. **Sufficiency of Negligence Claims**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Firestone Fin. Corp. v. Myer*, 796 F.3d 822, 825 (7th Cir. 2015) ("A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted.") (citation and brackets omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In doing so, the court must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016). The court may also consider "documents that are attached to the complaint, documents that are central

4

to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

A. **Proximate Causation**

As to whether plaintiffs have adequately pleaded "proximate cause," defendant argues that the complaint fails to allege facts sufficient to find *actual* exposure to a contaminated source, such as actual exposure to dental burs or other equipment infected with a virus, to recover under Wisconsin law. In support, defendant principally relies on *Babich v. Waukesha Memorial Hospital, Inc.*, 205 Wis. 2d 698, 556 N.W.2d 144 (Ct. App. 1996), which considered an emotional distress claim based on a hospital patient's alleged fear of contracting AIDS after accidental contact with a hypodermic needle left in her bedsheets, which punctured her skin but did not cause infection. In that case, the Wisconsin Court of Appeals dismissed plaintiff's claim as insufficient for lack of proof that the needle had contact with a "contaminated source" thus creating a risk of infection. *Id*. at 706, 556 N.W.2d at 147.

However, *Babich* is not so readily applied to the facts alleged here. Specifically, while defendant emphasizes language in *Babich* stating that the contaminated source rule is "useful" in determining which claims are permissible "in a variety of contexts," the Wisconsin Court of Appeals also noted its application was explicitly limited to the "needlestick" context. *Babich*, 205 Wis. 2d at 708-09, 556 N.W.2d at 147-48. Indeed, the court expressly adopted the contaminated source rule based on a contextual application of the public policy factors, established by the Wisconsin Supreme Court in *Bowen v. Lumbermens Mutual Casualty Company*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994), which

5

arguably narrows the required proof of proximate causation in emotional distress cases. In *Dyer v. Blackhawk Leather LLC*, 2008 WI App 128, 313 Wis. 2d 803, 758 N.W.2d 167, the Court of Appeals of Wisconsin emphasized the limits on the application of the "contaminated source rule" when later considering the argument that *Babich* similarly barred an emotional distress claim based on polluted groundwater. *Id*. at ¶ 26. ("We note that the analysis in *Babich*, by its own terms, is specific to needlesticks and HIV. . . . Simply identifying an object in any given case and labeling it a 'contaminated source' ignores [the *Bowen*] public-policy factors."); *see Alsteen v. Wauleco, Inc.*, 2011 WI App 105, ¶ 17, 335 Wis. 2d 473, 802 N.W.2d 212 ("The [*Babich*] court did not suggest that the contaminated source rule could apply in non-needle stick cases."). Defendant is correct to argue that the present facts are closer to the "needlestick" scenario than to a mass exposure to pollution scenario but, given the mass exposure element here, the court cannot apply *Babich* without analysis.

Accordingly, as in *Babich* and *Dyer*, this court must determine under Wisconsin law whether an application of the contaminated source rule precludes a finding of causation under the public policy factors in *Bowen:*

> (1) whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether in retrospect it appears too extraordinary that the negligence should have brought about the harm; (4) whether allowance of recovery would place an unreasonable burden on the negligent tortfeasor; (5) whether allowance of recovery would be too likely to open the way to fraudulent claims; or (6) whether allowance of recovery would enter a field that has no sensible or just stopping point.

*Bowen*, 183 Wis. 2d at 655, 517 N.W.2d at 444-45. Each of these factors were meant to

6

ensure the authenticity of emotional distress claims and the fairness of the financial burden placed on defendants, while abandoning the outmoded requirement that plaintiffs demonstrate a *physical* manifestation of their emotional distress. *Id*. at 654-55, 517 N.W.2d at 443.

In particular, the *Babich* court examined: (1) whether the needlestick injury was proportionate to culpability; (2) whether imposing liability would unreasonably burden future defendants; and (3) whether imposing liability would permit a reasonable stopping point. *Babich*, 205 Wis. 2d at 707-08, 556 N.W.2d at 147-48. These three factors are similarly well-suited to analyzing whether the contaminated source rule should apply to the unsanitary dental practices alleged here. While this court is unable to conclude that the contaminated source rule applies in the context of this case, at least at the pleading stage, a comparison with the *Babich* court's reasoning is instructive.

In *Babich*, the Wisconsin Court of Appeals found that its injury was *not* proportionate to culpability because "even if [the hospital] was 'careless' in its handling of [used] needles, it was not recklessly disregarding its patients' safety because such needles do not pose a significant health risk." *Babich*, 205 Wis. 2d at 707, 556 N.W.2d at 147 (citing a California state court case that estimated the probability to be less than one percent). In contrast, there is no evidence before this court as to the probabilistic risk of infection caused by Dr. Schiller's alleged practices. Certainly, an unsanitary dental bur used on multiple patients may create a more significant risk of infection than a stray needle, which only comes into contact with one patient after its first use. This question requires more detail about the nature of Dr. Schiller's practices and likely also expert testimony

about their objective medical risk. While the government suggests the risk was low because no one has become infected to date, such reasoning does not justify dismissal in the absence of any evidentiary record.

The *Babich* court also reasoned that because the risk of needlestick infection was low, hospitals should not be compelled to incur needless and costly measures to reduce their risk of future legal liability. *Babich*, 205 Wis. 2d at 707-08, 556 N.W.2d at 147-48. The court was similarly "concerned that health care providers would take the otherwise unnecessary step of segregating HIV/AIDS patients or possibly refusing to treat patients in their efforts to avoid legal liability." *Id*. at 708. In contrast, here, defendant has not established that the actual risk of infection created by Dr. Schiller's practices was low and, as importantly, compliance with basic professional requirements set by organizations such as the American Dental Association is *not* needless or too costly. Indeed, compliance with the Department of Veterans Affairs' *own* guidelines may well have avoided this incident altogether. Nor would there appear to be any comparable risk of patients being turned away.

Finally, the *Babich* court reasoned that imposing liability "would correspondingly expose the courts to more 'fear of AIDS' or 'AIDS phobia' claims" without a reasonable stopping point. *Babich*, 205 Wis. 2d at 708, 556 N.W.3d at 148. That court "[could not] identify any other way to segregate a needlestick injury from some other event which could also create a reasonable, but scientifically unfounded, fear" without a contaminated source rule. *Id*. At least on the face of the complaint, there would appear to be no comparable risk of phobia on these facts and, once again, it has not been established that the level of

risk posed by Dr. Schiller's practices is similar to that of a needlestick injury. Additionally, requiring adherence to basic professional standards would seem a reasonable stopping point on these facts, unlike in *Babich* where there was no comparable allegation of widespread improprieties at the defendant hospital.

Consequently, this court finds that the *Bowen* public policy factors do not necessitate application of the contaminated source rule on the pleadings alone. While defendant argues that plaintiffs lacked reasonable grounds for emotional distress because the letter they received informed them that the risk of infection was low, there is *no* evidence that the letter was correct in this assertion, and it may be that exposure to a low risk of a deadly infection provides reasonable grounds for emotional distress, at least where the exposure is to a large enough population. At the same time, it may ask too much of a group of patients to expect them to set aside their fears based on the assurances of a medical facility that admittedly did not adhere to basic professional standards during their treatment. All of this will need to be sorted out on summary judgment or at trial.

B. **Severe Emotional Distress**

Defendant also argues plaintiffs have not adequately alleged severe emotional distress, citing a fifty-five-year-old decision by the Wisconsin Supreme Court for the proposition that such a claim requires "an extreme disabling emotional response to defendant's conduct" rendering plaintiffs "unable to function in [their] relationships." *Alsteen v. Gehl*, 21 Wis. 2d 349, 360, 124 N.W.2d 312, 318 (1963). Plaintiffs' complaint is sufficient under this standard, as allegedly plaintiffs feared being infected by several potentially deadly viruses *and* infecting their loved ones. (Compl. (dkt. #1) ¶¶ 25-26.) At

9

the pleading stage, this is enough to infer that such fears could prompt a disabling emotional response. While specific proof will ultimately be needed to justify recovery, dismissal on the pleadings is not warranted at this time.

## II. Exhaustion of Administrative Remedies

Alternatively, defendant claims it is entitled to dismissal of the unnamed plaintiffs for failing to exhaust their administrative remedies as required by the Federal Tort Claims Act. The FTCA waives the sovereign immunity of the United States for torts involving "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of federal employees acting within the scope of their employment." *Levin v. United States*, 568 U.S. 503, 507 (2013) (quotation marks omitted). To bring a tort claim for monetary damages in federal court, however, the FTCA requires that plaintiffs first exhaust their administrative remedies.

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). Moreover, a Department of Justice regulation further requires the written claim include: "(i) notification of the incident; (ii) a demand for a sum certain; (iii) the title or capacity of the person signing; and (iv) evidence of this person's authority to represent the claimant." *Kanar v. United States,* 118 F.3d 527, 528 (7th Cir. 1997) (citing 28 C.F.R. § 14.2(a)). The Seventh Circuit interprets this to require that such notices

10

include "facts plus a demand for money." *Khan v. United States*, 808 F.3d 1169, 1173 (7th Cir. 2015).

This requirement under § 2675(a) is not a jurisdictional bar, however, rather the Seventh Circuit treats it as "a condition precedent to the plaintiff's ability to prevail." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) (quotation marks omitted). Potential plaintiffs need not "comply with every jot and tittle" of 28 C.F.R. § 14.2(a), "[s]o long as the proper agency had the opportunity to settle the claim for money damages before the point of suit . . . technical deficiencies in the administrative claim could well be a case of 'no harm, no foul.'" *Id*. at 787 (alterations, citations and quotation marks omitted). Thus, if "noncompliance does not hinder the settlement process that a claim is supposed to initiate," an FTCA claim is not barred. *Kanar*, 118 F.3d at 531.

Defendant argues that all unnamed plaintiffs are barred from joining the proposed classes, having failed to individually file the proper claim. This is consistent with the approach of jurisdictions that view exhaustion as a jurisdictional prerequisite to an FTCA suit. *See, e.g.*, *Lunsford v. United States*, 570 F.2d 221, 225 (8th Cir. 1977) (holding that filed claims were insufficient because "[n]ot all the claimants were identifiable; none of the named plaintiffs asserted authority to present claims on behalf of the unnamed class members; and no sum certain was stated with respect to the class claim so that the government could evaluate the claim for possible settlement."); *Caidin v. United States*, 564 F.2d 284, 286 (9th Cir. 1977) ("Since the major reason for the administrative claim requirement is to facilitate settlement of cases, we feel it necessary to require that the existence of such authority be asserted contemporaneously with the filing of the claim by

one who files on behalf of a claimant.") (citation omitted); *Artic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 794 (Fed. Cir. 2009) ("[T]he courts have uniformly held that a district court does not have jurisdiction over asserted class members who have not complied with the FTCA's administrative claim presentment requirements, and that the court lacks power to include those parties in the certified class.").

The Seventh Circuit has not addressed if its non-jurisdictional approach to FTCA exhaustion, which is more willing to forgive technical lapses that do not hinder the pre-suit settlement process, creates different requirements in class actions. Here, the record establishes that the six named plaintiffs submitted administrative claim forms but each member of the 592-person proposed class did not. But the letter from plaintiffs' counsel to the Department of Veterans Affairs, which enclosed the named plaintiffs' forms, stated that the named plaintiffs were bringing their case "on behalf of the 592 putative class members who were identified by the Department of Veterans Affairs as having been negligently exposed to the risk of infection from Hepatitis B, Hepatitis C, and HIV during their dental procedures at the Tomah VA Medical Center." (Apr. 20, 2017 Letter, Ex. A (dkt. #1-4) 2.) The letter went on to define the time period at issue and stated that class representatives were seeking a $50,000 payment for themselves and each unnamed member due to their extreme emotional distress. (*Id.*)

Given this level of detail, it is difficult to see how the pre-suit settlement process was hindered, especially when the alternative would have been the cumbersome and wholly unrealistic scenario where each unnamed class member separately submitted a claim. Regardless, the Seventh Circuit's requirement of specifying facts and a demand for money

appears to have been met. *Khan*, 808 F.3d at 1173. Specifically, the Department of Veterans Affairs knew the identities of each potential class member, as it had sent letters to each of them, and it was made aware that emotional distress was the basis for the class claims. The VA also had time to contact them before responding to named plaintiffs with a denial of their administrative claims.

While defendant argues its ability to settle was hindered because it was unaware if the named plaintiffs possessed the authority to represent unnamed plaintiffs, this would also be the case if a class action was brought after each potential member separately exhausted their administrative remedies. These proposed class members may ultimately opt-out to pursue different claims or no claim at all, which limits the authority of named plaintiffs to negotiate on their behalf. Such matters are, however, best addressed at the class certification phase. Accordingly, the unnamed class members will not be dismissed at this time.

## ORDER

IT IS ORDERED that:

1) Defendant's motion to dismiss (dkt. #8) is DENIED; and

2) Defendant's motion to stay class certification briefing (dkt. #26) is DENIED as the motion to dismiss has now been resolved. Each of the three deadlines related to plaintiffs' class certification motion is extended one week, with plaintiffs' initial motion now due October 26, 2018, defendant's response due November 23, 2018, and plaintiffs' reply due December 14, 2018.

Entered this 25th day of September, 2018.

                    BY THE COURT:

                    /s/
                    _____
                    WILLIAM M. CONLEY
                    District Judge