UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

CONSUELA SMITH-WILLIAMS,
FRED RIVERS, RICHARD MURPHY,
ROBERT RISTOW, ROGER SUHR,
and SALVADOR FUENTES, individually,
and on behalf of all similarly situated,

          *Plaintiffs,*                        Case No.: 17-CV-823

v.

THE UNITED STATES OF AMERICA,

          *Defendant.*
_____/

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE
DEPOSITION TESTIMONY OF DR. FRANK MARCANTONIO**

    The Plaintiffs, Consuela Smith-Williams, Fred Rivers, Richard Murphy, Robert Ristow, Roger Suhr and Salvador Fuentes, individually and on behalf of all similarly situated, by and through their undersigned counsel, hereby file this Memorandum in Support of Plaintiffs' Motion to Compel the Deposition Testimony of Dr. Frank Marcantonio, and state as follows:

**Introduction**

1. For over a year, between October 5, 2015 and October 21, 2016, the Defendant's employee, Dr. Thomas Schiller, negligently exposed hundreds of veterans, the Plaintiffs and Putative Class Members, to the risk of infection with Hepatitis B, Hepatitis C, and HIV by breaching established infection control standards during the veterans' dental procedures in the Tomah VA Medical Center Dental Clinic. See Exhibit A at 1, Exhibit B at 11.

2. On or about November 29, 2016, the Defendant sent a notification letter to the Plaintiffs and Putative Class Members which stated in pertinent part:

> *Our records indicate that between October 2015 and October 21, 2016 you were seen as a patient in the Tomah VA Medical Center's Dental Clinic for a dental procedure. This letter is to inform you that established infection control practices were not being followed by the dentist that treated you. While we believe the risk of infection is low, we recommend you come in to be tested….The laboratory test we are recommending you be tested for include the Hepatitis B virus, Hepatitis C virus, and the Human Immunodeficiency Virus (HIV).* See Exhibit A.

3. Thereafter the Plaintiffs and Putative Class Members underwent blood testing and received blood test results indicating that they had not been infected with a virus. See (D.E. 48) Moore Tr. 27:16-24.

4. From the time the Plaintiffs and Class Members received the notification letter until they received their blood test results indicating that they had not been infected with deadly viruses, they suffered severe emotional distress as they were forced to consider that they may have been infected with deadly viruses, may die as a result of having been infected, and/or may have unknowingly infected their loved ones with deadly viruses. See e.g., (D.E. 35) Smith-Williams Dec., at 1-2.

5. On November 1, 2017, Plaintiffs filed a negligence action against the Defendant under the Federal Tort Claims Act. See D.E.1.

6. In their Complaint, the Plaintiffs allege that the Defendant's employee, Dr. Thomas Schiller, exposed them to the risk of infection with deadly viruses by failing to follow infection control standards in the Defendant's Dental Clinic, and that the Defendant failed to adequately train, supervise and retain its employees in its Dental Clinic, including Dr. Schiller. *Id* at 9-10.

7. Dr. Frank Marcantonio was the Chief of Dental Services while Dr. Schiller was employed in the Dental Clinic.[1] Exhibit B at 8. It was Dr. Marcantonio's job to ensure that the quality of care provided in the Dental Clinic complied with Veterans Health Administration (VHA) regulations. See Exhibit B at 9.

8. The evidence elicited to date suggests that the quality of care provided in the Dental Clinic fell below VHA standards and that the Defendant's employees in the Dental Clinic were inadequately trained, supervised and negligently retained. See Exhibit A, Exhibit B at i-ii, 8, (D.E. 46) Brahm Tr. 43:10-13. The Plaintiffs sought to depose Dr. Marcantonio on these subjects.

9. On September 11, 2018, the Plaintiffs' served a Subpoena to Testify at Deposition in a Civil Action on Dr. Marcantonio through his counsel Christopher Landrigan, Esq., and thereafter properly noticed the deposition to take place near Dr. Marcantonio's home in Tomah, WI.

10. On September 18, 2018, Mr. Landrigan sent an email to Plaintiffs' counsel stating that he had advised his client, Dr. Marcantonio, to "decline to answer any questions during his deposition based on his Fifth Amendment rights." See Exhibit C.

11. During a phone conference on September 21, 2018, with Mr. Landrigan's law partner, Bonnie Brownell, Esq., Plaintiffs' counsel asked whether there were any areas of inquiry to which Dr. Marcantonio would be willing to provide substantive answers. Ms. Brownell advised that there were none.

12. Because the purported criminal conduct is not apparent from the facts of this case, Plaintiffs' counsel inquired as to the nature of any conduct by Dr. Marcantonio which could possibly lead to criminal charges, so that questions might be crafted to avoid disclosure of that specific conduct or

---

[1] In its investigative report, the VA Office of Inspector General referred to Dr. Marcantonio as the "FCDS" (Former Chief of Dental Services).

3

crime. However, Ms. Brownell refused to specify what conduct could possibly lead to criminal charges or identify what crime could possibly have been committed by Dr. Marcantonio.

13. On September 25, 2018, the Plaintiffs took Dr. Marcantonio's deposition. Dr. Marcantonio provided his name, address and date of birth, and then refused to answer any other questions. See (D.E. 50) Marcantonio Depo Tr. at 6:19-25,7:1-3 (**Q:** …Dr. Marcantonio—is your intention to answer any questions here today? **A:** On the advice of counsel— MR. LANDRIGAN: I would advise him that any—as we talked about, as his counsel, apart from identifying information about his name, address, date of birth, any substantive questions I would advise my client to assert his Fifth Amendment rights and instruct him not to answer the question.").

14. On November 15, 2018, the Plaintiffs filed a motion to compel the testimony of Dr. Marcantonio.

## **Memorandum of Law**

A witness does not have carte blanche to refuse to answer questions by virtue of the Fifth Amendment's self-incrimination clause. *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F. 3d 651, 663 (7th Cir. 2002). "To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability." *Id*. See also *In re Pansier*, 417 Fed. Appx. 565, 568 (7th Cir 2011) providing that civil litigants cannot invoke the Fifth Amendment as an obstructionist tactic. "Of course, the validity of the assertion hinges not on the witness's say so alone: the trial judge must determine whether the witness's silence is justified." *National Acceptance Co. of America v. Bathalter*, 705 F. 2d 924, 927 (7th Cir. 1983). "The witness bears the burden of showing that the privilege applies, and the court has the discretion to assess the facts underlying her claim of privilege." *FDIC v. Mahajan*, 2014 WL 3359333 (N.D. Ill. 2014) citing *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 n.5 (7th Cir. 1979).

Ultimately, a witness may invoke the Fifth Amendment privilege whenever the witness can demonstrate any possibility of prosecution that is more than fanciful. *U.S. v. Brownell*, 2005 WL 2319146 (E.D. Wis. 2005) citing; *In re Folding Carton Antitrust Litigation* at 871. For example, in *Gleason v. Welborn*, 42 F. 3d 1107 (7th Cir. 1983), the witness "drove petitioner to the Stay Out, waited while petitioner entered and shot the two victims, drove petitioner away, and didn't notify the police." *Id* at 1109. The court found that from those facts alone the witness could be prosecuted for obstruction of justice, and that the witness's fear of self-incrimination was thus "far from fanciful." *Id* at 1110.

In the instant case, the Plaintiffs have alleged, and the record supports, that Dr. Schiller provided negligent dental care to his patients in the Tomah VA Medical Center Dental Clinic. However, there is no indication that Dr. Schiller's conduct was anything other than negligent. An Investigations by the Department of Veterans Affairs Office of Inspector General revealed that Dr. Schiller failed to follow infection control standards, but there was no finding of criminal or even intentional conduct. See (D.E. 46) Brahm Tr. at 9:24-25, 10:1-11 (**Q:** You say it was purposeful. You mean it was purposeful that he was breaching infection control standards or purposefully trying to hurt the veterans? **A:** I don't think it was malicious…**Q:** Did anything in the investigation uncover that he was attempting to hurt anybody? **A:** No, not to my knowledge).

Likewise, there is nothing in the record which suggests that the Defendant's failure to adequately train, supervise or retain its employees in the Dental Clinic was criminal or could lead to criminal charges being filed against Dr. Marcantonio. Those failures only amount to negligence. See *Bruner Corp. v. Balogh*, 819 F. Supp. 811 (E.D. Wis. 1993) providing that the "right to invoke the privilege is not absolute. The privilege is not properly invoked 'if the testimony sought cannot possibly be used as a basis for, or in the aid of, a criminal prosecution against the witness…'" (citation omitted).

Finally, if Dr. Marcantonio is attempting to shield himself from testifying about criminal conduct that is unrelated to infection control breaches or negligent training, supervision and retention

5

of employees, then he should still be required to answer questions relating to those areas of inquiry, because his testimony relative to those subjects could not possibly subject him to criminal charges. The Fifth Amendment does not afford protection against giving testimony that will disclose civil liability. See *Pansier v. Wisconsin Dept. of Revenue*, 2010 WL 4025884 (W.D. Wis. 2010).

WHEREFORE for all of the foregoing reasons, the Plaintiffs respectfully request that this Court issue an Order compelling Dr. Marcantonio to testify at deposition.

### Certification

Pursuant to Fed R. Civ. P. 37(a)(1) the movant has conferred in good faith with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Respectfully Submitted,

By:

*s/ William Rieder*
William Rieder, Esq.

William T. Rieder, Jr., Esq.
The Downs Law Group
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Telephone No.: (305) 444-8226
Facsimile No.: (305) 444-6773
wrieder@downslawgroup.com
FL Bar No. 0044834
*Co-Counsel for the Plaintiffs*

Matthew A. Biegert., Esq.
Doar, Drill & Skow
103 North Knowles Avenue
P.O. Box 388
New Richmond, WI 54017
Telephone No.: (715) 246-2211
Facsimile No.: (715) 246-4405
mbiegert@doardrill.com
WI Bar No. 1000368
*Co-Counsel for the Plaintiffs*

>C.J. Kishish, Esq.
>Kishish Law Group
>1555 Southcross Drive West
>Burnsville, Minnesota 55306
>Telephone No.: (888) 402-5552
>ckishish@kishishlawgroup.com
>MN Bar No. 0229805
>*Co-Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of November 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via hand delivery on counsel for Dr. Frank Marcantonio, Christopher Landrigan, Esq., Brownell Landrigan, PC, 1818 N Street NW, Suite 520 Washington, DC 20036, clandrigan@brolanlaw.com.

>*s/ William Rieder*
>William Rieder, Esq.