IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CONSUELA SMITH-WILLIAMS,
FRED RIVERS, RICHARD MURPHY,
ROBERT RISTOW, ROGER SUHR, and
SALVADOR FUENTES, on behalf of themselves
and others similarly situated,

                     Plaintiffs,              OPINION AND ORDER

    v.

                                             17-cv-823-wmc

UNITED STATES OF AMERICA,

                     Defendant.

In this putative class action, plaintiffs bring suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), for lapses in infection control procedures at the Tomah VA Medical Center. Presently before the court is their motion to certify the class. (Dkt. #30.) Plaintiffs' motion will be denied because individual questions predominate over common questions, and a class action is not a superior method of adjudicating this dispute.

BACKGROUND

As veterans of the United States military, plaintiffs were all treated by Dr. Thomas Schiller at Tomah VA Medical Center's Dental Clinic between October 5, 2015, and October 21, 2016. While the parties seem to contest the specifics, there is no dispute that during this time period, Schiller's hygiene practices were unorthodox, including the use of his own, personal equipment on patients and, at times, the failure to wash his hands, to change his gloves and to wear a dental gown as frequently as expected. (*See* Mot. to Certify Br. (dkt. #34) 1-2; Opp'n (dkt. #56) 3-4.) In particular, defendant acknowledges that

Schiller: (1) "began using personally-owned, non-VA-approved diamond dental burs when performing crown and bridge procedures"; (2) "began using personally-owned cotton applicators during crown and bridge procedures, and personally-owned matrix bands during about half of his cavity and root canal procedures"; (3) "used a personally-owned post on at least one occasion"; (4) "was observed touching non-sterile objects . . . with a gloved hand and then continuing a dental procedure"; (5) performed dental procedures without a protective dental gown on occasions; and (6) "was suspected of not washing his hands in between glove changes." (Opp'n (dkt. #56) 3-4.) On October 21, 2016, Schiller ceased treating patients.

From October 2015 through October 2016, Schiller treated 592 patients. Following a risk assessment, the Department of Veterans Affairs sent letters to these individuals on November 29, 2016:

> Our records indicate that between October 2015 and October 21, 2016 you were seen as a patient in the Tomah VA Medical Center's Dental Clinic for a dental procedure. This letter is to inform you that established infection control practices were not being followed by the dentist that treated you.
>
> While we believe your risk of infection is low, we recommend you come in to be tested. We want to emphasize that receiving this letter does not mean that you were infected but we are taking extra steps to be certain. The laboratory tests we are recommending you be tested for include the Hepatitis B virus, Hepatitis C virus, and the Human Immunodeficiency Virus (HIV). We recommend that you come in and be tested to provide you with reassurance.
>
>       *  *  *
>
> As the Acting Medical Center Director, let me sincerely apologize for the concern that this notification may bring to you and your family.

(Patient Notification Letter (dkt. #1-4) 1-2.) In addition, patients who had seen Schiller

within the last six months were further advised that "tests may not always be able to reliably detect recent exposures and infections from these viruses," so those patients should repeat the testing "at the end of the 6 month timeframe." (Progress Notes (dkt. #34-11) 1.)

Thankfully, none of the patients tested positive for new viruses. (Moore Dep. (dkt. #48) 27:16-24 ("[T]here were no active infections in those patients.").) Nevertheless, plaintiffs allege that they and other members of the putative class suffered from severe emotional distress during the period between receiving notification of a possible infection and their negative test results.

OPINION

To certify a class under Federal Rule of Civil Procedure 23(b)(3), plaintiffs must satisfy a two-step analysis. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). First, the proposed class must satisfy the four threshold requirements under Rule 23(a): numerosity, commonality, typicality and adequacy. *Id.* Second, the proposed class must satisfy the two requirements under Rule 23(b)(3): predominance and superiority. *Id.*

Because the trial court must engage in a "rigorous analysis" to determine whether the proposed class satisfies these requirements, *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 722 (7th Cir. 2011), that analysis may overlap with a determination of the merits of the case. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). When overlap occurs, "the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). If material factual disputes

3

arise, the court may even be required to receive evidence and resolve those disputes before ruling on class certification, although courts are cautioned not to "turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811.

Here, plaintiffs seek to certify a class under Rule 23(b)(3): "All Tomah VA Medical Center patients who received dental care between October 2015 and October 2016, received a letter from the Tomah VA Medical Center informing them of their potential exposure to Hepatitis B, Hepatitis C, and HIV, and subsequently tested negative for newly acquired active viral infections."[1] (Mot. to Certify (dkt. #30) 1.) While plaintiffs are able to satisfy the Rule 23(a) prerequisites, they cannot meet the Rule 23(b)(3) requirements of predominance and superiority.

## I. Rule 23(a) Prerequisites

### A. Numerosity

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Since plaintiffs' proposed class consists of up to the 592 patients exposed to the risk of infection by Schiller while he was

---

[1] Initially, plaintiffs asked the court to certify a subclass of patients who "were forced to wait an additional six months for further blood testing to confirm that they were not infected with Hepatitis B, Hepatitis C, and HIV." (Mot. to Certify (dkt. #30) 1-2.) However, plaintiffs appear to have abandoned that request. (Reply (dkt. #72) 21 ("As the Plaintiffs are only seeking certification based on issues directed at the Defendant's liability, the Plaintiffs request that this Court certify a class containing all 592 Putative Class Members in the same class for the issue of liability and address damages at a later stage of the case.").) And, as defendant notes, patients who required a second blood test did not have to wait six months from receipt of the notification letter, but rather only six months from their possible exposure. (Opp'n (dkt. #56) 29.) Accordingly, the court will only consider whether to certify the larger class.

4

employed at the Tomah VA Medical Center, this requirement is easily met. *See Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *2 (E.D. Wis. Mar. 29, 2011) ("The Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." (citing *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969))). It would be impractical to join all of these individuals in one case. Defendant does not challenge numerosity, except as to the subclass that plaintiffs have now abandoned. (*See* Opp'n (dkt. #56) 10, 29.) Accordingly, this prerequisite is met.

B. **Commonality**

The commonality requirement is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single, common issue will satisfy this requirement if the issue is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 564 U.S. at 350. Under the commonality standard, plaintiff must do more than "merely" demonstrate "that they have all suffered a violation of the same provision of law." *Id.* Plaintiff must show that "the class members have suffered the same injury." *Id.* (internal quotation marks and citation omitted).

In essence, plaintiffs have identified a single, common question here: Did defendant adequately train and supervise its employees regarding implementing infection control standards and identifying breaches of those standards?[2] (Mot. to Certify Br. (dkt. #34)

---

[2] Plaintiffs suggest a second question as well: whether Schiller was acting within the scope of his employment when he exposed the putative class to the risk of infection. However, this is no longer at issue because defendant "expressly admitted that Dr. Schiller treated putative class members 'while in the scope of his employment relationship.'" (Opp'n (dkt. #56) 21; *id.* at 22 ("Nobody disputes that . . . Dr. Schiller was acting within the scope of his employment at all relevant times.").)

5

14.) This question addresses issues common to all of plaintiffs' negligent infliction of emotional distress and negligent supervision claims. Because this question can be answered on a class-wide basis, the commonality requirement is met.

### C. Typicality

Under Rule 23(a), typicality requires that the named plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). This inquiry should ensure that "a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with . . . those of the representative." *Insolia v. Phillip Morris, Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) (quoting 1 Newberg & Conte, *Newberg on Class Actions* § 3.13 (3d ed. 1992)).

Named plaintiffs were all treated by Dr. Schiller between October 2015 and October 2016, and all subsequently received letters informing them of their possible exposure to Hepatitis B, Hepatitis C, and HIV. Defendant argues that their claims are not typical because they "did not undergo any crown or bridge procedures," such that "they were never exposed to an unsterile dental bur," and they mostly did not "undergo any invasive dental work." (Opp'n (dkt. #56) 27-28.) However, defendant's argument misses the forest for the trees. Everyone in the putative class, including the named plaintiffs, were potentially exposed to serious viruses through the failure of a single individual to follow the VA's infection control standards. The differing forms of potential virus exposure -- reused dental

burs, unchanged gloves, unwashed hands, the use of Schiller's other personal equipment, or the non-use of dental gowns -- comprise a larger failure to abide by that same infection control protocol. Accordingly, typicality is also met.[3]

**D. Adequacy**

The final Rule 23 requirement is adequacy, which ensures that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A class representative is not adequate if he is subject to a defense to which other class members are not subject *or* he could not prove the elements of the class claim for reasons particular to him. *CE Design*, 637 F.3d at 724–25.

For many of the same reasons that defendant argues plaintiffs' claims are not typical, they also argue plaintiffs are not adequate representatives.[4] The interests of the named plaintiffs and the class members do not appear to conflict. Additionally, named plaintiffs have adequately prosecuted this case since its filing. Accordingly, plaintiffs appear more than adequate as class representatives.

Further, defendants do not even attempt to challenge the adequacy of putative class counsel, and they appear to be experienced in both complex litigation and class actions, as

---

[3] Defendant also speculates that because the government declined to settle administratively the claims of the named plaintiffs, their "claims may be weaker than, and thus atypical of, the class as a whole." (Opp'n (dkt. #56) 29 n.13.) However, the court is strongly disinclined to rely on defendant's speculation to find a lack of typicality, especially when the decision not to settle is not *necessarily* a reflection of the strength of plaintiffs' claims, but instead may be the result of defendant's failure to appreciate their strength.

[4] Although already rejected at the motion to dismiss stage, defendant also preserves its argument that the named plaintiffs could not exhaust administrative claims for others, and argues that if the Seventh Circuit reversed, then the class -- but not the named plaintiffs -- would be subjected to an affirmative defense. (*Id.* at 28-29.) Seeing as the court already rejected that argument (Mot. to Dismiss Op. (dkt. #28) 12-13), the court need not consider this argument further.

well as with negligent infliction of emotional distress cases. (Rieder Decl. (dkt. #41) ¶ 5; Biegert Decl. (dkt. #42) ¶ 2.) Accordingly, plaintiffs and plaintiffs' counsel are adequate under Rule 23(a).

## II. Rule 23(b)(3) Requirements

Despite the Rule 23(a) prerequisites being met, the court must still consider: (a) whether "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (b) whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, plaintiffs do not meet either requirement.

### A. Predominance

The "predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1777, p. 518-519 (2d ed. 1986)). Predominance is not satisfied if "individual questions . . . overwhelm questions common to the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). A predominance analysis begins with the elements of the underlying cause(s) of action. *Messner*, 669 F.3d at 815 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). Plaintiffs' proposed class falters under this test because individual inquiries into injury and causation overwhelm the common question of negligence.

Plaintiffs bring two claims: (1) negligent infliction of emotional distress; and

(2) negligent training, supervision and retention. (Compl. (dkt. #1) 9-11.) Both of these claims sound in Wisconsin common law of tort and require: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Miller v. Wal-Mart Stores, Inc.*, 219 Wis.2d 250, 260, 580 N.W.2d 233 (1998) (quoting *Rockweit v. Senecal*, 197 Wis.2d 409, 418, 541 N.W.2d 742 (1995)). In addition, to prove negligent infliction of emotional distress, a plaintiff must not only establish negligence, but *"severe emotional distress."* *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis.2d 627, 632, 517 N.W.2d 432 (1994) (emphasis added). Likewise, to prove negligent training, supervision or retention, a plaintiff must not only establish negligence, but that "the failure of the employer to exercise due care was a *cause-in-fact* of the wrongful act of the employee that in turn caused the plaintiff's injury." *Miller*, 219 Wis.2d at 262 (emphasis added).[5]

Plaintiffs are generally correct that individual inquiries about causation and damages do not necessarily prevent class certification. *See Pella Corp. v. Saltzman*, 606 F.3d 391, 394-95 (7th Cir. 2010) (affirming certification of liability class where "class members still must prove individual issues of causation and damages"). However, this case is different because the elements of causation and injury will predominate over the other common elements. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010) (affirming denial of class certification where proximate causation required individualized proof to establish a claim so that common issues did not predominate); *Clark v. Experian Info. Sols.*,

---

[5] Put another way, to establish causation in a claim for negligent training, supervision or retention, the plaintiff must prove that: (1) the employee's wrongful act was the cause-in-fact of plaintiff's injury; and (2) the employer's negligence was a cause-in-fact of the employee's wrongful act. *Miller*, 219 Wis.2d at 262.

*Inc.*, 256 F. App'x 818 (7th Cir. 2007) (same); *Tomeo v. Citigroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *11 (N.D. Ill. Sept. 27, 2018) (denying class certification because individualized issue of consent was "inextricably intertwined with [the] primary issue of liability to the point where it dominates over the other common issues"); *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 288 n.37 (E.D. Pa. 2013) (distinguishing *Pella* because the liability determination "requires individualized inquiries of fact that defeat the predominance required to certify a class under Rule 23(b)(3)"). Indeed, since the general failure of defendant's employee to meet its duty of care is not even in question here -- having admitted as much by sending out the prophylactic warning letter giving rise to plaintiffs' claims as discussed above -- these individual questions of causation and damages not only predominate over the question common to the class, they are essentially the *only* questions remaining, nullifying any efficiencies achieved through class adjudication. *See Parko v. Shell Oil, Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("Predominance of issues common to all class members . . . goes to the efficiency of a class action as an alternative to individual suits."). Accordingly, this requirement cannot be met.

B. **Superiority**

As for the requirement of superiority, the case must again be one "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee note to the 1966 Amendment). Since causation and damages must be determined on an individual basis here, a class action is not a superior

method for resolving this dispute. Moreover, these individual inquiries would create serious manageability problems if the case were to proceed as a class action.

Accordingly, plaintiffs' motion for a class action must be denied.

ORDER

IT IS ORDERED that: plaintiffs' motion to certify a class (dkt. #30) is DENIED.

Entered this 25th day of April, 2019.

> BY THE COURT:
>
> /s/
>
> _____
> WILLIAM M. CONLEY
> District Judge