# T. Anthony Cumbo, MD PLLC

793 Center Street #482
Lewiston, New York 14092
716-238-5634

March 7, 2018

William T. Rieder, Jr., Esq.
The Downs Law Group
Miami-Dade Office
3250 Mary Street
Suite 307
Coconut Grove, FL 33133

Dr. Mr. Rieder

I reviewed the case of Consuela Smith-Williams et. al from both an Infectious Diseases and Administration standpoint.

Records and documents reviewed and referenced in the formation of opinions set forth are as follows:

Department of Veterans Affairs Office of Inspector General Review of Improper Dental Infection Control Practices and Administrative Action / Tomah VA Medical Center (Report No. 17-00712-366).

VISN 12 Lead Dentist Report from Tomah Dental dated October 31, 2016

Declaration of Melissa Moore, RN filed 11/23/18

Declaration of Laura Martin, PA-C filed 11/23/18

Declaration of Laurie Cleaver filed 11/23/18

Declaration of Richard B. Fischer, D.D.S. filed 11/23/18

Oral deposition of Dr. Thomas Lee Schiller from January 16, 2019

Oral deposition of Melissa Moore from September 25, 2018

Undated interview of Lori Cleaver performed at the Tomah VA Medical Center

Undated interview of Sarah Wagner



EXHIBIT
Cumbo 5
4-17-19 (RCO)

Oral deposition of Victoria Brahm from September 25, 2018

A letter penned by Dr. Schiller's attorney Dawn Marie Harris on January 30, 2017

Infection Control Standards for VA Dental Clinics (October 21, 2013)

Transmission of blood – borne pathogens in US dental health care settings. 2016 update. Cleveland JL et al. J Am Dent Assoc. 2016 Sep;147(9):729-738.

Guidelines for Infection Control on Dental Health-Care senttings-2003. CDC. MMWR 2003;52(No. RR-17).

Summary of Infection Prevention Practices in Dental Settings / Basic Expectations for Safe Care from the Centers for Disease Control and Prevention published in October 2016

Veterans Health Administration Criteria and Standards for Dental Program (VHA handbook 1130.01) from February 11, 2013

Tomah Veterans Administration Medical Center Employee Education Training Booklet (TMS Course # VA4151859)

A notification letter provided to Ms. Consuela Smith-Williams dated November 29, 2016

Medical records of Salvador Eduardo Fuentes, Roger Joseph Suhr, Carl Robert Ristow, Richard Gene Murphy, Fred Rivers and Consuela Yvonne Smith-Williams.

## Infectious Diseases / Infection Control:

By way of background, I received my Medical Degree from the State University of New York at Buffalo School of Medicine in 1999. I completed my internship, residency and chief residency at the Johns Hopkins University / Sinai Hospital Program in Internal medicine from 1999-2003. I was also awarded a Fellowship Diploma in Internal Medicine from the Johns Hopkins Hospital in 2003. I then completed a Fellowship in Infectious Diseases Medicine at The State University of New York at Buffalo School of Medicine from 2003-2005.

I have been licensed to practice medicine in NY since 2002 without interruption. I have been board-certified by the American Board of Internal Medicine in the subspecialty of Infectious Diseases since 2005 without interruption.

I have been practicing Infectious Diseases medicine since 2005. I am currently the Associate Chair of the Division of Infectious Diseases at Catholic Health of Buffalo – Mt. St. Mary's Hospital.

For complete details, a current curriculum vitae and a list of testimony are included with this document.

My opinions as they relate to infection control issues are as follows:

There were clear breaches in infection control standards during this time at the Tomah VA Dental Clinic based on information obtained from the above sources and summarized as follows:

1) Unapproved multiple use dental burs were brought into the clinic from Dr. Schiller's own supply and used on more than one patient without effective sterilization.

2) Hand hygiene was not consistently observed by Dr. Schiller.

3) Equipment was touched by contaminated gloves and hands by Dr. Schiller.

Dr. Shiller put patients at significant risk of infection with Hepatitis B and C virus, and to a lesser extent, HIV infection. On page 20 of Melissa Moore's Deposition she notes that "at the time of this review for the date listed, there was one person that identified as having HIV, 20 with hepatitis C, and no patients at that time with hepatitis B." On page 21 she indicates that she later determined that 3 patients had hepatitis B. The VISN-12 Report indicates that Lori Cleaver and Sara Anderson witnessed Dr. Schiller use unsterile, personal diamond burs stored in the operatory. Both were told by Dr. Shiller that these were "my burs" and that "you do not see this, I'll take care of this." This was on page 6 of the report. These patients served as a potential cohort of infectious virus that could be transmitted if proper precautions were not maintained.

Clearly the patients who underwent invasive bur procedures were placed at high risk of infection. It is my opinion that all patients seen by Dr. Schiller were placed at actual risk of cross infection especially with Hepatitis B and C based on data regarding the survivability of hepatitis B and C on environmental surfaces.

The Cleveland et al paper referenced above provides some insight. According to their research and findings, Hepatitis B and Hepatitis C can persist on environmental surfaces and devices contaminated with blood. Hepatitis B is a hardy virus that has been demonstrated to survive in dried blood at room temperature on environmental surfaces for at least 1 week. In studies related to infectivity, the investigators have found that Hepatitis C can survive in the environment for up to 6 weeks on dry surfaces. The article identifies 3 published reports of Hepatitis B and Hepatitis C transmission in outpatient dental care areas. Environmental contamination is the suspected route of transmission in these cases. Additionally, the CDC notes that "emphasis for cleaning and disinfection should be placed on surfaces that are most likely to become contaminated with pathogens, including clinical contact surfaces" and "when these surfaces are touched, microorganisms can be transferred to other surfaces, instruments or to the nose, mouth or eyes or DHCP or patients." It is intuitive that even if surfaces are disinfected, touching it with contaminated hands or gloves will mitigate the effect of the disinfectant and place the patient and DHCP at risk. This is why hand hygiene is the most important part of infection control.

Along that same vein, Lori Cleaver notes on page 53 of her interview that "I told him about his-his hygiene, him not washing his hands before or after a patient, him touching everything of

mine, including my mouse with his dirty, contaminated gloves." Clearly, proper precautions were not being maintained.

I reviewed the medical records of Salvador Eduardo Fuentes, Roger Joseph Suhr, Carl Robert Ristow, Richard Gene Murphy, Fred Rivers and Consuela Yvonne Smith-Williams. These patients had a variety of work performed including oral examination, cleaning and dry socket repair.

In my opinion, a glove that has been in the mouth of a patient with bleeding gums and that touches a shared object could cause contamination of a second glove that touches the same object. This second glove could transmit virus into the mouth of a subsequent patient who could become infected especially if there is bleeding tissue or other compromise commonly experienced in the typical course of dental work including cleanings.

## Hospital Administration and Oversight:

Again, by way of background, I am the Vice President of Medical Affairs at Mt. St. Mary's Hospital in Lewiston NY. It is a Joint-commission certified hospital licensed for 175 beds. I have served in this capacity for over 3 ½ years. I have a graduate certificate in Healthcare Leadership and Management from the University of Dallas at Texas and a Certificate in Advanced Executive Leadership for Physicians from Cornell University. I am enrolled in a Masters of Business Administration Program at the University of Texas at Dallas with a concentration in Healthcare Leadership. I am responsible for multiple departments and divisions within the hospital and our outpatient clinics. I also oversee physician quality and performance issues.

It is my opinion that the standard of care was breached at the Tomah VA Medical Center, specifically in terms of:

1) Poor supervision and accountability
2) Presence of an environment not conducive to quality control and empowerment of associates to voice concerns
3) Leadership indifference to quality control

The deposition of Victoria Brahm is illustrative. On page 14 she notes that "there were some areas where there was some bullying and intimidation by the previous leadership." On page 15 she agrees with the statement that there was a pervasive culture of intimidation and retaliation against employees who spoke out. On page 36 she notes that there was inadequate supervision in the dental clinic. Finally, on page 38 she agrees that "they created a culture of fear and a culture of intimidation as opposed to a culture where if you see something, you say something; if you see an adverse event, you report it."

In my experience as a physician leader, this type of culture is extremely dangerous. The front line staff are frequently the first people to notice unsafe practices. If they are not free to speak in a safe manner, then problem recognition is delayed and unsafe practices can continue unchecked.

I am regularly informed of minor and major issues by the nursing staff at my hospital and I consider it to be one of the most valuable tools in my day to day operation.

On page 8 of the OIG report, the OIG notes that "Dental assistant B told us he/she reported Dentist A for his poor hand hygiene, noncompliant use of PPE, specifically not wearing gowns, and his appearance of sleeping at his desk to the FCDS." It does not appear that action was taken by leadership regarding these issues. In fact, on page iii of the same report it states "We found no documentation that facility leadership counseled Dentist A for poor hand hygiene, the noncompliant use of PPE, sleeping at this desk, or the use of non-VA unsterile burs."

In my experience, this type of culture is very demoralizing to staff. A leader must investigate and counsel when such serious accusations are brought to his or her attention.

Inspections were insufficient. The OIG report notes that advance notification and other issues associated with Dental Clinic Inspection were present. Environment of Care (EOC) rounds were utilized. However, the OIG notes that the EOC committee staff did not open drawers and perform complete inspections.

In my experience, regular and thorough inspection is an essential component of quality patient care and a safe hospital environment.

More concerning, however, is the revelation on pages 29-30 of Dr. Schiller's deposition that Dr. Marcantonio encouraged the removal of forbidden items prior to inspection to avoid penalty. This is corroborated by Lori Cleaver's interview testimony on page 68 when she says "when inspections came through, when Dr. O'Brien came through, Dr. Mark would tell us to remove all of our personal items, which really they're not personal items, but they're things that Dr. O'Brien didn't want in our operatories."

This is clearly ineffective and dangerous. Inspections and quality assurance are essential to proper infection control. Worse, however, is Dr. Marcantonio's complicit behavior that is described by Dr. Schiller & Lori Cleaver. This type of behavior sets the tone for a culture that doesn't value patient safety.

Finally, it appears that training was inadequate. For example Sarah Wagner indicates that she was not familiar with the EPERS safety reporting system on page two of her interview summary. Lori Cleaver also notes that she was unfamiliar with reporting mechanisms on page 33 of her deposition. Dr. Schiller testified to sporadic and inconsistent training as well.

Associates should know how to report adverse events.  In addition, they should be instructed and be familiar with codes of compliance. It is important that when a professional practioner is hired, he or she be trained in a consistent manner. In my hospital system for example, newly hired doctors complete a rigorous course of training including elements of infection control, compliance with federal and state mandates, and the like. They should work in an environment that fosters communication, respect and action when concerns are realized.

I reserve the right to amend these opinions in the future should further data become available.

Sincerely,

Thomas A. Cumbo, MD