IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CONSUELA SMITH-WILLIAMS, FRED
RIVERS, RICHARD MURPHY, ROBERT
RISTOW, ROGER SUHR, and SALVADOR FUENTES,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

OPINION AND ORDER

17-cv-823-wmc

---

This case is set for a bench trial commencing on December 16, 2019. Plaintiffs assert negligence claims under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 1346(b)(1), arising out of their receipt of a letter from the VA Medical Center in Tomah, Wisconsin, after its discovery of infection control breaches by a former VA dentist, Dr. Thomas Schiller, who had treated each of them. Pending before the court are defendant's motions in limine (dkt. #152) and third-party respondent Frank Marcantonio's motion to quash (dkt. #157). In advance of the final pretrial conference ("FPTC") scheduled for December 11, 2019, the court issues the following opinion and order regarding those motions.

OPINION

I. Motions in Limine

The value of filing motions in limine before a bench trial is open to debate, given that the trier of fact is obviously not actually shielded from the evidence or argument that the party seeks to limit. Nevertheless, because the issues raised and the court's approach

to them may provide some guidance to the parties in presenting their case at trial, the court addresses those motions individually below.

### A. Defendant's Motion in Limine No. 1

Defendant's first motion in limine asks the court to exclude "any evidence related to the risk of exposure to Hepatitis and HIV from specific infection control breaches unless Plaintiffs establish that such breaches occurred during their dental visits and exposed them to risk of infection." (Def.'s Br. Mots. Limine (dkt. #153) 2.) More specifically, although conceding that the actual level of risk to plaintiffs may be relevant, defendant argues that absent evidence that plaintiffs were "exposed to a particular risk, evidence as to the level of *that* risk is simply not relevant." (*Id.*)

As a general proposition, Dr. Schiller's infection control breaches are relevant to various elements in this case, including breaches that did not necessarily put plaintiffs directly at risk. First, the breaches are relevant to plaintiffs' negligence claim that Dr. Schiller's serious and repeated infection control breaches caused plaintiffs to receive the letter warning of a risk of infection and provoked severe emotional distress. The letter and plaintiffs' distress were, therefore, arguably caused by Dr. Schiller's breaches, whether or not those breaches actually put plaintiffs at risk of infection during their individual office visits.[1] Second, less clear is the relevance to plaintiffs' underlying negligence claims of

---

[1] Whether defendant should be held liable for Schiller's actions (or failures to act) that did not *actually* put plaintiffs at risk or at only an extremely small risk is a potentially salient question, but it remains largely a legal question for the court -- whether imposing liability would be contrary to public policy -- rather than a fact question. (S.J. Opinion (dkt. #142) 21-26.) Regardless, it is not a basis to ignore the evidence on actual risk of infection altogether.

evidence as to the actual risks of exposure, much less actually contracting an infection, by virtue of Dr. Schiller's general infection control breaches. Accordingly, the court will reserve on this question for further discussion at tomorrow's FPTC.

Plaintiffs also argue that defendant negligently trained and/or supervised Dr. Schiller, which caused his infection control breaches, or at least the failure to detect them sooner, and in turn caused plaintiffs' distress. *See Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 262, 580 N.W.2d 233, 238 (1998) (in a negligent hiring, training, or supervision claim, "the causal question is whether the failure of the employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury"). Plaintiffs' allegations that Dr. Schiller frequently and blatantly failed to follow infection control procedures such as washing his hands and wearing a protective gown are relevant to whether defendant exercised due care in supervising and/or training Dr. Schiller, regardless of whether those breaches actually created a risk of infection for plaintiffs.

Finally, Dr. Schiller's infection control breaches are relevant to public policy considerations regarding the proper scope of liability in this case, and in particular to determining whether plaintiffs' injury was proportionate to defendant's culpability. *See Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis.2d 627, 655, 517 N.W.2d 432 (1994) (one public policy consideration that may preclude liability is "whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor"). Culpable conduct can include conduct that was not the cause-in-fact of the alleged injury. *See Burton v. Am. Cyanamid Co.*, No. 07-CV-0303, 2019 WL 4540080, at *5 (E.D. Wis. Sept. 19, 2019) (concluding that defendants' culpable conduct was its general manufacturing and marketing of lead

paint, even though "chances [were] slim that their product was the factual cause of plaintiff's injury"). So, in assessing defendant's culpability in this case, even infection control breaches that did not ultimately put plaintiffs at risk of infection may be relevant.

As a result, the relevance of Dr. Schiller's infection control breaches may go to both whether they create an actual or perceived risk of infection for plaintiffs *and* whether liability should lie as a matter of public policy. Accordingly, the court will deny in part and reserve in part defendant's first motion in limine.

### B. Defendant's Motion in Limine No. 2

Defendant next argues that the court should exclude evidence "regarding conduct by Dr. Schiller that did not put patients at risk of Hepatitis or HIV," such as evidence that he was seen sleeping in his office and that his medications noticeably affected his behavior at work. (Def.'s Br. Mots. Limine (dkt. #153) 1, 4.) As plaintiffs point out, however, such evidence is probative of whether defendant exercised due care in supervising Dr. Schiller. "[T]o the extent Plaintiffs intend to offer these other acts to demonstrate that Dr. Schiller acted in conformity with a particular character trait," defendant also argues that "such evidence is inadmissible under Fed. R. Evid. 404(b)(1)." (Def.'s Br. Mots. Limine (dkt. #153) 4.) Such use would indeed be impermissible; however, this argument would appear to be a straw man, since plaintiffs have not attempted to date to use these acts as evidence of Dr. Schiller's propensity to act similarly. Regardless, since the evidence is relevant to other, permissible purposes, it will not be excluded. Accordingly, defendant's motion will be denied.

4

## C. Defendant's Motion in Limine No. 3

In its third motion in limine, defendant requests that the court prohibit "[p]laintiffs' expert witnesses from offering opinions as to the methodology and opinions of the United States' expert, David Pegues, M.D." (Def.'s Br. Mots. Limine (dkt. #153) 1.) Plaintiffs respond that it did not submit a rebuttal expert report because "the Court ordered that there would be no rebuttal expert reports." (Pls.' Opp'n (dkt. #159) 7.) While correct, this is not an invitation to blindside defendants with a round of new opinions that "rebut" defendant's expert report in name only. (*See* Prelim. Pretrial Conf. Order (dkt. #22) 2 (emphasis added).) Because plaintiffs have disclosed no additional expert opinions to rebut Dr. Pegues's methodology or opinion, they will generally not be permitted to introduce them at trial unless already disclosed in the original reports or a reasonable extension of disclosed opinions. *See* Fed. R. Civ. P. 26(a)(2) (requiring pre-trial disclosure of expert opinions); *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) ("An expert's testimony at trial may also be limited to opinions properly disclosed."). Further, this ruling will not prevent plaintiffs' counsel from inquiring into Dr. Pegues' opinion and methodology on cross-examination, nor does it prohibit plaintiffs' experts from offering opinions already included in their reports or in conflict with defendant's expert's opinions. For example, plaintiffs' expert, Dr. T. Anthony Cumbo, offered in his expert report descriptive terms as to the level of risk posed by Dr. Schiller's conduct, and he will be permitted rebut Dr. Pegues' contrary opinions as to the level of risk at trial. Accordingly, defendant's third motion in limine will be granted in part and denied in part.

### D. Defendant's Motion in Limine No. 4

Defendant's final motion in limine asked the court to "[p]reclud[e] damages in excess of Plaintiffs' administrative tort claims." (Def.'s Br. Mots. Limine (dkt. #153) 1.) Defendant argues that the Federal Tort Claims Act (under which plaintiffs have brought their claims) limits damages to the amounts of the administrative claims that each plaintiff filed with the agency. (*Id.* (citing 28 U.S.C. § 2675(b).) Plaintiffs basically agree, adding only that plaintiffs may be entitled to recover post-judgment interest pursuant to 28 U.S.C. § 2674 and an award of costs pursuant to 28 U.S.C. § 2412. (Pls.' Opp'n (dkt. #159) 8.) Accordingly, defendant's motion is granted in part and denied in part; the court will preclude damages in excess of plaintiffs' administrative tort claims except that plaintiffs may additionally seek post-judgment interest and costs.

## II. Respondent's Motion to Quash

In addition to defendant's motions in limine, respondent Dr. Frank Marcantonio -- former Chief of Dental Services at the Tomah VA -- has filed a motion to quash plaintiffs' trial subpoena demanding his testimony. (Mot. to Quash (dkt. #157) 1.) Because Marcantonio could -- and purportedly plans to (*see id.* at 2) -- invoke his Fifth Amendment privilege against self-incrimination as to most, if not all, of his likely relevant testimony that plaintiffs may hope to solicit from him, the court will grant his motion to quash, subject to further discussion at the FPTC. In particular, the court would like to address with the parties whether there are any areas of inquiry not likely to lead to Marcantonio's invocation of the Fifth Amendment.

On September 25, 2018, Dr. Marcantonio appeared for a deposition in this case,

but after providing his name, address, and date of birth, he refused to answer any further questions, asserting that his testimony was privileged under the Fifth Amendment. (*See* Marcantonio Dep. (dkt. #50).) Plaintiffs then moved to compel his testimony (dkts. #52, 53), to which Dr. Marcantonio responded by filing, with the permission of the court, an *ex parte* and under seal document explaining his reasons for asserting the privilege (dkts. #66, 70, 71). Magistrate Judge Steven Crocker subsequently denied plaintiffs' motion to compel, concluding that Dr. Marcantonio faced a possibility of prosecution and that he therefore had a right to remain silent under the Fifth Amendment. (Dkt. #86.) Marcantonio is now asking the court to quash plaintiffs' trial subpoena of him on the same grounds. (Dkts. #157, 163.)

The Fifth Amendment protects a person from being compelled to provide self-incriminating testimony. *Doe v. United States*, 487 U.S. 201, 203 (1988). To invoke the privilege, the person must show that his truthful answer would create a possibility of prosecution that is "more than fanciful." *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 (7th Cir. 1979). However, "a judge's prediction of the likelihood of prosecution" is *not* dispositive. *Id.* The privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

Even so, in the context of a civil case like this one, invocation of the privilege does not provide the person "carte blanche . . . to refuse to answer questions." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002). Instead, a court generally

determines the applicability of a privilege on a question-by-question basis. *See Rogers v. United States*, 340 U.S. 367, 374 (1951) ("As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination."). A court is required to quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Based on the representations made by Dr. Marcantonio in his *ex parte* submission to the court (dkt. #71), he has demonstrated a possibility of prosecution that is more than fanciful. In Judge Crocker's order regarding respondent's opposition to plaintiffs' motion to compel, he noted that although the privilege is normally invoked on a question-by-question basis, "given the nature of this lawsuit and the nature of Dr. Marcantonio's reasons for taking the Fifth . . . Dr. Marcantonio's legitimate invocation of the privilege would commence long before plaintiffs' attorneys got close to obtaining any relevant or material information from him." (Order Mot. to Compel (dkt. #86) 3.) Because the subpoena would require the disclosure of privileged information, the court will quash it subject to modification at the FPTC.

ORDER

IT IS ORDERED that:

1) Defendant's first motion in limine is DENIED IN PART AND RESERVED IN PART as set forth above.

2) Defendant's second motion in limine is DENIED.

3) Defendant's third motion in limine is GRANTED IN PART AND DENIED IN PART as set forth above.

4) Defendant's fourth motion in limine is GRANTED IN PART and DENIED IN PART as set forth above.

5) Respondent's motion to quash is GRANTED subject to modification at the FPTC.

Entered this 10th day of December, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge